IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

In Re:                                                                                                Case No.:
**DEUCE INVESTMENTS, INC.**                                                    **10-01083-8-RDD**
　　Debtor                                                                                     Chapter 11

## DISCLOSURE STATEMENT

Pursuant to the provisions of Section 1125(b) of the Bankruptcy Code, the Debtor hereby submits the following information:

### I.  PURPOSE

The purpose of this Disclosure Statement ("Disclosure Statement") is to provide each holder of a claim against the Debtor with adequate information about the Debtor and the Debtor's Plan of Liquidation ("Plan") so that each holder of a claim may make an informed decision about whether to accept or reject the Plan.  Attached hereto as **Exhibits "A"** and **"B"** are summaries of the Debtor's assets and liabilities.

*Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

The Plan describes:

- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
- The classification of claims and interests and the treatment of the classes of claims and interests, including a description of whether each class is impaired or unimpaired.

Be sure to read the Plan as well as the Disclosure Statement. It is the Plan itself that will, if confirmed, establish your rights.

### B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

#### 1. *Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will be scheduled by the Court and you will receive an Order setting forth the date, time and place.

#### 2. *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the Debtor's attorney.

#### 3. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact the Debtor's attorney at the address shown at the end of this Disclosure.

## II. CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

**The Debtor's Plan, which accompanies this Disclosure, is incorporated herein by reference. Section III of the Plan describes the classification of claims and interests and the treatment of the classes of claims and interests, including a description of whether each class is impaired or unimpaired. Exhibit B (Liabilities) hereto also describes whether each class of claims and interests is impaired or unimpaired.**

**THE PLAN IS A PLAN OF LIQUIDATION WHEREIN ALL ASSETS OF THE DEBTOR WILL BE SOLD AND DISTRIBUTED. ALL NET PROCEEDS WILL BE PAID TO CREDITORS AFTER TAXES, ADMINISTRATIVE COSTS AND POST-PETITION OPERATIONAL EXPENSES ARE PAID.**

The particular method for payment of each creditor is outlined in Section III of the Plan. All proceeds of liquidation will be distributed in accordance with the priorities of the Code and as described more fully in the Plan.

### A. The Purpose of the Plan of Liquidation

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment that each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Administrative Expenses and Tax Claims

The following types of claims are addressed in the Plan:

#### 1. *Administrative Costs*

Administrative costs are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses may also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.

#### 2. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years.

### C. Classes of Claims and Equity Interests

The following classes are also addressed in the Plan. The Plan describes the proposed treatment that they will receive under the Plan:

#### 1. *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim. The specific classes are described in Section III of the Plan.

#### 2. *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

3.  *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

4.  *Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

### III. HISTORY AND BUSINESS STRUCTURE

The Debtor filed a Chapter 11 Petition on February 12, 2010. The Debtor is a North Carolina corporation, formed in 2000. The members of the Debtor are Linwood J. Jones and Donald E. Millard, each of whom has a 50% ownership interest. The Debtor is engaged in the business of developing residential subdivisions, and over the last ten years, has developed and sold more than 1,000 single-family lots in Wake, Johnston, and Pender Counties. On the date of filing, the Debtor owned six tracts of land, located in Onslow, Pender and Johnston Counties. The tracts of land are described in detail in Exhibit A.

The Debtor obtained Acquisition & Development loans from SunTrust for approximately $10 million for development of four of its tracts, which are the Majestic Oaks Tract, the Village at Folkstone Tract, the Morris Landing Tract, and the Permeta Branch Tract. The Debtor also obtained a loan from BB&T for the Fuller Tract and a loan from Crescent State Bank ("Crescent") for the Virginia Creek Tract. The Debtor also received financing from several private investors.

Once the Debtor obtained the required permits for all of the tracts, SunTrust, BB&T, and Crescent ceased all development funding. SunTrust's loans are all cross-collateralized. Crescent foreclosed on the Virginia Creek Tract on February 5, 2010. This foreclosure proceeding was stayed when the Debtor filed its Petition.

On January 29, 2010, the Debtor entered into an executory contract with Donald Fose of Fose Properties, LLC ("Fose Properties"), in which Fose Properties committed to developing and funding all of the expenses of development for the Permeta Branch Tract, the Village at Folkstone Tract, the Morris Landing Tract, and the Virginia Creek Tract. The Debtor was unable to get its creditors to agree to a development plan and was unable to secure commitments for the Majestic Oaks Tract or the Fuller Tract.

Since filing, the principals of Debtor have been paying all of the Debtor's expenses individually and are unable to continue doing so, as the Debtor does not have any income. The Debtor believes it is in the best interests of its creditors to liquidate its assets to pay its obligations.

### IV.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as specified herein, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor.  The Debtor hereby assumes all leases currently in effect, in which the Debtor is the lessor.

Any person with a Claim arising from such rejection shall be deemed to hold a general unsecured claim and shall file a proof of claim within sixty (60) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection

### V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

A. The Debtor proposes to pay its creditors under the Plan through the liquidation of its assets.

B. <u>Sale Free and Clear of Liens</u>.  All real and personal property owned by the Debtor that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations.  In order to expedite the sale process, provide clear title to the properties sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to purchasers, simultaneous with the entry of the Order Confirming Plan, the Court will enter a free and clear order, which shall provide that all sales will be free and clear of all liens, interests, and other claims or interests.  All real or personal property sold by the Debtor shall be sold pursuant to the free and clear order to be entered.  No further motions related to the sales of property shall be required; provided however, the Debtor may file such motions and seek such orders to the extent needed to provide reasonable comfort or accommodation to the purchaser(s) or to specify the method of distribution of the sales proceeds.

C. <u>Distribution of Sales Proceeds</u>.  Upon the sale of the real or personal property proposed to be sold by this Plan, the liens secured by such property shall attach to the net proceeds of sale remaining after payment of all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions, and any other costs permitted under § 506(c) of the Code), and shall be paid to lienholders in accordance with the priorities of the Code.

D. <u>Procedure for Deficiency Claims</u>.  Any creditor asserting a deficiency claim shall file a proof of claim within the time period specified in the treatment for such creditor or within sixty (60) days of the Effective Date whichever is longer, or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full. In the event the Debtor obtains its Final Decree prior to the deadline for filing such deficiency claim, such creditor shall inform the Disbursing Agent of such deficiency claim within the same time period. In such event, a proof of claim form shall not be required, but the creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the amount of such claim and an itemization of such claim.

E.      Claims Paid by Third Parties.  To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not the Debtor, such creditor shall, within two (2) weeks therefore, inform the Debtor of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under this Plan.

F.      Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court.  Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.

G.      De Minimis Distributions.  No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim.  Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

H.      Unclaimed Property.  If any distribution remains unclaimed for a period of 90 days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim.  Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

I.      Preservation of Avoided Transactions for the Benefit of the Estate.  All transactions avoided or otherwise set aside pursuant to §§ 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to § 551 and applicable case law.  Funds received from such transactions shall be distributed to creditors according to the priorities of the Code.  In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property.  However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be paid to the Disbursing Agent for distribution to creditors.

J.      The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

K.      The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

L.      Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

M.  Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan.  Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

N.  Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

O.  All objections to claims, fee applications, and adversary proceedings will be filed with the Court within 60 days of the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

P.  <u>Procedure for Payment of Professional Fees</u>.  Current Court approved professionals shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

## VI.  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.  <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.  <u>Acceptance by a Class of Creditors</u>.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.  <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to vote if:

(1) Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2) Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3) Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4) Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D. <u>Confirmation Hearing</u>. The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E. <u>Acceptances Necessary to Confirm the Plan</u>. At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F. <u>Confirmation of Plan Without Necessary Acceptances</u>. The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes. In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class. In the event that any class votes against the plan, the Debtor requests and moves the Court under the provisions of the Plan entitled "Cramdown," for confirmation pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1129(b)(2)(A).

## VII. "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such

acceptances by the said impaired classes. The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under § 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## VIII.  DISCLAIMER

All parties are advised and encouraged to read this Disclosure Statement and the Plan in their entirety before voting to accept or reject the Plan or before voting on any other matter as provided for herein.

Statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan itself, the Disclosure Statement, and all exhibits annexed thereto. The statements contained in this Disclosure Statement are made only as of the date hereof. No assurances exist that the statements contained herein will be correct any time hereafter.

The information contained in this Disclosure Statement is included herein for purposes of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to determine how to vote on the Plan. No representations concerning the Debtor are authorized by the Debtor other than as set forth in this Disclosure Statement. Any other representations or inducements made to solicit your acceptance that are not contained in this Disclosure Statement should not be relied upon by you in arriving at your decision to accept or reject the Plan.

With respect to adversary proceedings, contested matters, other actions or threatened actions, this Disclosure Statement shall not constitute or be construed as an admission of any fact or liability, stipulation, or waiver; rather, this Disclosure Statement shall constitute statements made in connection with settlement negotiations.

This Disclosure Statement shall not be admissible in any non-bankruptcy proceeding involving the Debtor or any other party. Furthermore, this Disclosure Statement shall not be construed to be conclusive advice on the legal effects, including, but not limited to the tax effects, of the Debtor's Plan of Reorganization. You should consult your legal or tax advisor on any questions or concerns regarding the tax or other legal consequences of the Plan.

The information contained herein is not the subject of a certified audit and formal appraisals. The Debtor's records are dependent upon internal accounting methods. As a result, valuations and liabilities are estimated. Although substantial efforts have been made to be complete and accurate, the Debtor is unable to warrant or represent the full and complete accuracy of the information contained herein.

## IX.  PAYMENTS UNDER PLAN ARE IN FULL AND FINAL SATISFACTION OF DEBT

Except as otherwise provided in Section 1141 of the Bankruptcy Code, or the Plan, the payments and distributions made pursuant to the Plan will be in full and final satisfaction,

settlement, release, and discharge, as against the Debtor, of any and all claims against, and interests in, the Debtor, as defined in the Bankruptcy Code, including, without limitation, any Claim or Equity Interest accrued or incurred on or before the Confirmation Date, whether or not (i) a proof of claim or interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) such Claim or Equity Interest is allowed under Section 501 of the Bankruptcy Code, or (iii) the holder of such Claim or Equity Interest has accepted the Plan.

## X.  POTENTIAL MATERIAL FEDERAL TAX CONSEQUENCES

The Debtor is a subchapter S corporation with two shareholders.  As a subchapter S corporation, the Debtor is a pass-through entity for federal and state income tax purposes.  As a result, any income tax liabilities arising as a result of or in connection with the execution of the Plan will flow through to the Shareholders.

Because it has been a subchapter S corporation for more than ten years, the Debtor will not be subject to any corporate-level built-in gains taxes or corporate-level taxes on any excess passive investment income generated during operations or in connection with any asset sales.

Any losses reported on previous tax returns were passed through to the Shareholders.  These losses and any refunds or tax benefits attributable thereto are personal to the Shareholders, and are not available to creditors as an asset of the Debtor.  The same is true with respect to anticipated losses for the 2010 tax year.

Some of the Debtor's debts cannot be paid in full under the Plan and will therefore be partially discharged.  As a result, the Debtor will recognize cancellation of indebtedness ("COD") income in an amount equal to the discharged debt, to the extent the accrual of such debt has generated a tax deductible expense for, or were capitalized and included in the tax basis of assets of, the Debtor.  This income (i) will be excluded from the Debtor's taxable income under § 108(a)(1)(A) of the Internal Revenue Code, (ii) will not be passed through to the Shareholder, and (iii) will not generate increases in the Shareholders' basis in their stock under § 1367 of the Code. At the close of the year in which the discharge occurs, the Debtor will be required to reduce its basis in its assets in an amount equal to the COD income excluded from its taxable income. (As a pass-through entity, the Debtor has no other reducible tax attributes, such as net operating losses.) The Shareholders' tax attributes will be unaffected by the excluded COD income.

Forgiven debts which are owed to the Shareholders or any other related parties will most likely be treated as contributions to capital by the Shareholders.  A deemed contribution to capital will be tax-free to the Debtor and non-deductible by the Shareholders or related party, and will increase the Shareholders' basis in his stock.

Payments to be made under the Plan will produce the following income tax effects:

- Payment of administrative claims generally will be deductible by the Debtor, to the extent not already deducted.

10

- Payment of secured claims generally will not be deductible by the Debtor, as they have already been included in the basis of the assets securing the debt or cost of goods sold, or applied towards payment of previously deducted expenses.
- Payment of unsecured claims will be deductible by the Debtor to the extent (i) the payment thereof would produce a deduction outside of Chapter 11, and (ii) a deduction for the subject payment has not already been accrued.
- The Debtor will recognize income or loss on the sale of any assets sold in an amount equal to the difference between its amount realized on each sale and its adjusted basis or cost of goods sold in the subject asset(s) immediately prior to the transfer. The amount realized will include the amount of any nonrecourse indebtedness which is eliminated as the result of a sale.

During the term of the Plan, income, gains, losses and deductions will be passed through to the Shareholders. Losses and deductions will generate commensurate reductions in the Shareholders' basis in their stock in the Debtor, and any net income or gain passed through to them will create basis increases.

The Debtor is a North Carolina corporation and the Shareholders are North Carolina residents. Because North Carolina income tax law follows federal income tax law, the issues discussed above applies equally to the Debtor and the Shareholders for state income tax purposes.

For federal income tax purposes, loan creditors who receive principal payments under the Plan generally will recognize capital gain or loss in an amount equal to the difference between the amount of the principal payments and their bases in their claims. (A creditor may have a basis in its claim which is different from the face amount of the indebtedness as a result of charge-offs, or because it acquired its claim for something other than the face amount from the original lender.) Any interest payments received by creditors under the Plan will generate ordinary income to such creditors, to the extent such amounts have not already been accrued.

A loan creditor whose debt is significantly modified will be treated as having received a new debt instrument in exchange for the old one. This will be treated as a sale or exchange of the old debt for a new instrument with a value determined under IRS rules. This may result in the recognition of capital gain or loss by the creditor in an amount equal to the difference between the value of the new instrument and the creditor's basis in the claim.

Trade creditors of the Debtor who receive payments under the Plan will recognize federal taxable income in a manner consistent with their methods of accounting for receipts of this nature.

To the extent creditors are subject to North Carolina income tax, their treatment for state tax purposes will follow the federal treatment discussed above. The income tax treatment of creditors in states other than North Carolina is beyond the scope of this disclosure statement.

CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasury Department and/or IRS, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot

be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. A formal and thorough written tax opinion would first be required for any tax advice contained in this communication to be used to avoid tax related penalties. Please consult your own tax professional.

## XI.  PROVISIONS FOR VOTING ON A PLAN

A. <u>Creditors Allowed to Vote and Deadline.</u>  Creditors holding allowed claims are entitled to vote to accept or reject the Debtor's Plan of Reorganization. The Court has fixed a date by which ballots upon the proposed Plan must be filed with counsel for the Debtor as an agent of the Court. Even though a creditor may not choose to vote, or may vote against the Plan, the creditor will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities in each class of creditors and/or is confirmed by the Court. Creditors who fail to vote will not be counted in determining acceptance or rejection of the Plan. Allowance of a claim or interest for voting purposes does not necessarily mean that the claim will be allowed or disallowed for purposes of distribution under the terms of the Plan. Any claim to which an objection has been or will be made will be allowed for distribution only after determination by the Court. Such determination of allowed status may be made before or after the Plan is confirmed.

B. <u>Voting Provisions.</u>  In order for the Plan to be accepted by the class of creditors holding general unsecured claims, creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in the total number of allowed claims of creditors voting on the Plan must accept the Plan. Under certain limited circumstances more fully described in 11 U.S.C. § 1129(b), the Court may confirm the Plan by a "cramdown" notwithstanding the rejection thereof by more than one-third (1/3) in amount or one-half (1/2) in number of the creditors voting on the Plan. The Debtor intends to seek confirmation under 11 U.S.C. § 1129(b) in the event any class of creditors rejects the Plan.

C. <u>Representations Limited.</u>  No representation concerning the Debtor, particularly regarding future business operations or the value of the Debtor's assets, has been authorized by the Debtor except as set forth in this statement. You should not rely on any other representations or inducements offered to you to secure your acceptance or decide how to vote on the Plan. Any person making representations or inducements concerning acceptance or rejection of the Plan should be reported to counsel for the Debtor.

While every effort has been made to provide the most accurate information available, the Debtor is unable to warrant or represent that all information is without inaccuracy. No known inaccuracies are set forth herein. Further, much of the information contained herein consists of projections of future performance. While every effort has been made to ensure that the assumptions are valid and that the projections are as accurate as can be made under the circumstances, the Debtor has not undertaken to certify or warrant the absolute accuracy of the projections.

No formal appraisals have been undertaken of the Debtor's property for the purpose of preparing this Disclosure Statement. The property values which were assigned and summarized

below are the Debtor-in-Possession's best estimate of the values of the property as of the time of the filing of this Disclosure Statement. However, the Debtor has sought the opinions of persons experienced in valuing property in arriving at its estimates of values. These values may differ from values placed on the property at the time of the filing of the petition for relief and the subsequent schedules.

## XII.  ACCEPTANCE AND CONFIRMATION

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. The confirmation hearing will be scheduled at a time and place to be determined by the Bankruptcy Court. The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the confirmation hearing.

At the confirmation hearing, the Bankruptcy Court will determine whether the requirements of § 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that (i) the Plan has classified Claims in a permissible manner; (ii) the Plan is in the "best interests" of all Creditors; (iii) the Plan is feasible; (iv) the Plan has been accepted by the requisite number and amount of Creditors in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances; (v) the Plan and its proponent comply with various technical requirements of the Bankruptcy Code; (vi) the Debtor has proposed the Plan in good faith; (vii) any payments made or promised in connection with the Plan are subject to the approval of the Bankruptcy Court as reasonable; and (viii) the Plan provides specified recoveries for certain priority claims. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation hearing.

A. **Classification of Claims**. The Bankruptcy Code requires that a plan place each creditor's claim in a class with "substantially similar" claims. The Debtor believes that the Plan's classification of claims complies with the requirements of the Bankruptcy Code and applicable case law.

B. **The Best Interests Test**. Notwithstanding acceptance of the Plan in accordance with § 1126 of the Bankruptcy Code, the Bankruptcy Court must find, whether or not any party in interest objects to Confirmation, that the Plan is in the best interests of the Creditors. Bankruptcy courts have generally defined "best interests" as the Bankruptcy Code's requirement that, under any plan of reorganization, each member of an impaired class of creditors must receive or retain, on account of its claim, property of a value, as of the effective date of the plan, that is not less than the amount such creditor would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan is in the best interests of all Creditors.

To determine what the Creditors would receive if the Debtor were liquidated under chapter 7, the dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case needs to be considered. The amount that would be available for the satisfaction of Claims would consist of the Debtor's interest in the net proceeds resulting from the disposition of

13

the Estate's assets, augmented by the Debtor's interest in the cash on hand. The Estate's interest would be further reduced by the amount of any Secured Claims, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business. These calculations are set forth in a liquidation analysis attached to this Disclosure Statement.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a Chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such a trustee may engage to assist in the liquidation.

After satisfying Administrative Claims arising in the course of the Chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time the Case was pending under Chapter 11, including compensation for the Debtor, attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

For the reasons discussed above, the Debtor has concluded that the Plan provides Creditors with a recovery that has a present value at least equal to the present value of the distribution that such Person would receive if the Estate were liquidated under Chapter 7 of the Bankruptcy Code.

C. **Feasibility of the Plan**. Section 1129(a)(11) of the Bankruptcy Code requires a judicial determination that confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Debtor or any other successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan. The Debtor believes that the Debtor will be able to meet its obligations under the Plan.

D. **Confirmation.** The Plan may be confirmed if the holders of impaired Classes of Claims accept the Plan. Classes of Claims that are not impaired are deemed to have accepted the Plan. A Class is impaired if the legal, equitable, or contractual rights attaching to the Claims or interests of that Class are modified other than by curing defaults and reinstating maturities or by full payment in cash.

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of allowed claims in that class. This calculation includes only those holders of claims who actually vote to accept or reject the Plan. Votes on the Plan are being solicited only from holders of Allowed Claims in impaired Classes who are expected to receive distributions.

In the event that an impaired Class does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if (i) all other requirements of § 1129(a) of the Bankruptcy Code are satisfied, and (ii) as to each impaired Class that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class. **THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF ALL CREDITORS AND STRONGLY**

**RECOMMENDS THAT ALL PARTIES ENTITLED TO VOTE CAST THEIR BALLOTS IN FAVOR OF ACCEPTING THE PLAN.** Nevertheless, the Debtor has requested that the Bankruptcy Court confirm the Plan over the rejection of any non-accepting Class in the event all other elements of § 1129(a) of the Bankruptcy Code are satisfied.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive. The Debtor believes that, under the Plan, all holders of impaired Claims are treated in a manner that is consistent with the treatment of other holders of Claims with which any of their legal rights are intertwined. Accordingly, the Debtor believes the Plan does not discriminate unfairly as to any impaired class of Claims.

The condition that a plan be "fair and equitable" generally requires that an impaired class that has not accepted the plan must receive certain specified recoveries, as set forth in § 1129(b)(2) of the Bankruptcy Code. The Debtor believes that the Plan meets the thresholds specified in this section of the Bankruptcy Code.

## XIII. EFFECT OF CONFIRMATION

A. Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

B. <u>Injunction</u>. As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to § 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtors or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing,

## XIV. RECOMMENDATION AND CONCLUSION

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE GREATEST RECOVERY TO CREDITORS AND IS IN THE BEST INTEREST OF CREDITORS, THEREFORE, THE DEBTOR RECOMMENDS THAT ALL CREDITORS VOTE TO ACCEPT THE PLAN.**

## XV. OTHER SOURCES OF INFORMATION AVAILABLE TO CREDITORS AND PARTIES IN INTEREST

      Additional motions, affidavits, orders or other documentation which might be of interest to any holder of a claim against the Debtor in this proceeding are shown on the docket sheet maintained by the Clerk's office. Copies of the docket sheet and actual items can be obtained from the office of the Clerk of the Bankruptcy Court:

Stephanie Edmondson, Clerk
U.S. Bankruptcy Court
1760-A Parkwood Boulevard
Wilson, NC  27893
(252) 237-0248

(This space intentionally left blank.)

Respectfully submitted, this the 18th day of June, 2010.

s/ Laurie B. Biggs
LAURIE B. BIGGS
N.C. State Bar No. 31845
Rebecca A. Scherrer
N.C. State Bar No. 35557
Attorneys for the Debtor
STUBBS & PERDUE, P.A.
8450 Falls of Neuse Road, Suite 206
Raleigh, NC 27615
(919) 870-6258
(919) 870-6259 Facsimile

DEUCE INVESTMENTS, INC.

By: _____
Don Millard
President

**Deuce Investments, Inc.**
Exhibit A

| Real Estate | Value |
|---|---:|
| 25.53 acres of undeveloped land on Cleveland Road located in Johnson County, NC ("Fuller Tract") (as-is value) | $ 450,000.00 |
| 49.02 acres consisting of 64 lots on Watts Landing Road located in Pender County, NC ("Virginia Creek Tract") (as-completed value) | $ 735,300.00 |
| 107.79 acres consisting of 105 lots, 13 acres of undeveloped land, and a sewer plant located on Majestic Oaks Drive off US Hwy 1 and Factory Road in Hamstead in Pender County, NC ("Majestic Oaks Tract") (estimated as-completed value) | $ 7,992,000.00 |
| 146.80 acres consisting of 155 permitted single-family lots, 21 condo sites (116 units) on Morris Landing Road at Holly Ridge located in Onslow County, NC ("Morris Landing Tract") (as-completed value) | $ 3,021,000.00 |
| 231.07 acres consisting of 203 permitted single-family lots, 50 multi-family sites (250 units) on Folkstone Road, located 500 feet off US Hwy 17 at Holly Ridge in Onslow County, NC ("Village at Folkstone Tract") (as-completed value) | $ 4,545,000.00 |
| 32.57 acres of undeveloped land preliminarily approved for 55 single-family lots on Old Folkstone Road at Sneads Ferry located in Onslow County, NC ("Permeta Branch Tract") (as-completed value) | $ 390,840.00 |
| **Total Real Property:** | **$ 17,134,140.00** |

| Personal Property | |
|---|---:|
| Checking Account at BB&T | $ 21.00 |
| **Total Personal Property:** | **$ 21.00** |
| **TOTAL REAL AND PERSONAL PROPERTY:** | **$ 17,134,161.00** |

**Deuce Investments, Inc.**
Exhibit B

| Class | Claim # | Impairment | Amount of Claim | |
|---|---|---|---|---|
| **Class 1: Administrative Claims** | | Impaired | To Be Determined by the Court | |
| Stubbs & Perdue, P.A. | | | | |
| | | | | |
| **Class 2: Ad Valorem Tax Claims** | | Unimpaired | | |
| Johnson County Tax Office | | | $ | 731.92 |
| Onslow County Tax Collector | 8 | | $ | 83,780.94 |
| Pender County Tax Office | 7 | | $ | 78,665.89 |
| Surf City Tax Collector | 9 | | $ | 2,389.81 |
| | | | $ | 165,568.56 |
| | | | | |
| **Class 3: Tax Claims** | | Unimpaired | | |
| North Carolina Dept of Revenue | 4 | | $ | 8,044.00 |
| | | | | |
| **Class 4: BB&T** | 11 | Impaired | $ | 293,796.06 |
| | | | | |
| **Class 5: Crescent State Bank** | 1 | Impaired | $ | 623,360.21 |
| | | | | |
| **Class 6:  Donald R. Mason** | 6 | Unimpaired | $ | 900,830.51 |
| | | | | |
| **Class 7: Sun Trust** | | Impaired | | |
| Loan # 91 | | | $ | 5,337,629.21 |
| Loan # 59 | | | $ | 2,646,442.07 |
| Loan # 75 | | | $ | 2,460,903.23 |
| Loan # 109 | | | $ | 259,696.09 |
| | | Total: | $ | 10,704,670.60 |
| | | | | |
| **Class 8:  Fose Properties, LLC** | | Impaired | Contract Rejected | |
| | | | | |
| **Class 9: General Unsecured Claims** | | Impaired | | |
| Benny Rowland Backhoe Serv | 10 | | $ | 461,993.33 |
| ECLP Co. | 2 | | $ | 359.23 |
| Enviro-Matters | | | $ | 6,095.08 |
| Environmental Chemists, Inc. | | | $ | 12,000.00 |
| Scott J. Gerow | 12 | | $ | 913,093.24 |
| Scott J. Gerow | 13 | | $ | 296,679.61 |
| JDG, Inc. | | | $ | 1,726,964.90 |
| Gregory A. Johnson | | | $ | 1,000,607.68 |
| Linwood J. Jones | | | $ | 1,365,726.23 |
| Joseph S. Hill, Jr. & Assoc. | | | $ | 26,925.00 |
| Landis, Inc. | | | $ | 3,399.79 |
| Millard & Millard | | | $ | 252,634.50 |
| Donald E. Millard | | | $ | 1,625,071.64 |
| NC Dept Env & Natural Res | | | $ | 1,310.00 |
| Pender County Utility Dept. | | | $ | 16,157.72 |
| Progress Energy Carolinas | | | $ | 2,673.65 |
| R.D. Braswell Construction Co. | | | $ | 141,097.03 |

| | | | |
|---|---|---|---|
| Eric Sellers | | $ | 1,475,000.00 |
| Woodruff, Reece & Fortner | | $ | 1,500.00 |
| Southwind Surveying & Eng. | | $ | 154,768.35 |
| Hewett & Wood, P.A. | 5 | $ | 2,343.75 |
| | **Total:** | **$** | **9,486,400.73** |

Case 10-01083-8-RDD    Doc 106   Filed 06/18/10   Entered 06/18/10 16:58:56    Page 20 of 20