IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| In Re: | Case No.: |
| **DEUCE INVESTMENTS, INC.** | **10-01083-8-RDD** |
| Debtor | Chapter 11 |

## PLAN OF LIQUIDATION

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), Deuce Investments, Inc. (hereafter "the Debtor"), hereby submits the following Plan of Liquidation:

### I. SUMMARY OF PLAN

The Debtor's Plan of Liquidation ("Plan") is based on the Debtor's belief that the interests of its creditors will be best served if it is allowed liquidate its assets. The Debtor will pay its creditors through the liquidation of its assets, as set out herein and in accordance with the priorities established by the Bankruptcy Code.

### II. DEFINITIONS

1. "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under § 507(a)(1) of the Bankruptcy Code.

2. "ALLOWED" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period set forth in Section IV, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

3. "AVAILABLE CASH" shall mean the total cash available for distribution on the Effective Date.

4. "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title ll of the United States Code, as enacted in 1978 and thereafter amended. References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. § 101, et seq.

5. "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

6. "CLAIM" shall mean a duly listed or a timely filed claim which is allowed

1

in order to be paid by the Court.

7. "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

8. "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

9. "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1129.

10. "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

11. "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

12. "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

13. "DEBTOR" shall mean the Debtor identified on the first page of this Plan.

14. "DISBURSING AGENT" shall mean Trawick H. Stubbs, Jr., attorney, or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

15. "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with § 1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

16. "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

17. "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under the Debtor's Plan.

18. "EFFECTIVE DATE" shall be that date on which the Order Confirming Plan becomes final and non-appealable.

19. "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

20. "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expires; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

21. "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

22. "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

23. "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition.

24. "PLAN" shall mean this Plan of Liquidation in its present form or as it may be amended or modified.

25. "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under § 507.

26. "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

27. "SALE" shall mean the sale of certain assets of the Debtor under this Plan.

28. "SALE PROCEEDS" means the proceeds of the Sale of certain assets of the Debtor under this Plan, after payment of all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions, and any other costs permitted under § 506(c) of the Code).

29. "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

30. "SUBSTANTIAL CONSUMMATION" shall mean the time the Debtor has commenced the distribution of initial Plan payments to all creditor classes.

31. "TAX CLAIM" shall mean any claim entitled to priority in treatment

pursuant to § 507(a)(8).

### III. CLASSIFICATION AND TREATMENT OF CLASSES OF CREDITORS

The Debtor classifies the following classes of claims, indicating whether said class is impaired or unimpaired, and proposes the following treatment:

A.  **Class 1 - Administrative Costs:**

(1) <u>Description of Claims</u>. Class 1 consists of claims for any cost or expense of administration pursuant to §§ 503, 506, and 507 of the Bankruptcy Code.

The following claims of professionals will be paid subject to Court approval:

Stubbs & Perdue, P.A.   Attorney for the Debtor   To be determined by Court

(2) <u>Impairment</u>.   This class will be impaired.

(3) <u>Treatment</u>.   Administrative costs and expenses approved by the Court shall be paid in cash including accruals to date of payment on the later of ten days from the Effective Date of the Plan or approval by the Court, subject to any agreements between the parties for later payment.  In the event that funds are not available to pay such costs and expenses within ten (10) days of the Effective Date of the Plan, then each holder of such a claim will receive payments from the sale of the Debtor's assets until paid in full.  If additional administrative claims exist, claimants shall have 30 days from the Effective Date to file claims.  Allowed claims shall be paid from the proceeds of sales of the Debtor's assets.

B.  **Class 2 – Ad Valorem Taxes:**

(1) <u>Description of Claims.</u> Class 2 consists of claims for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtor based upon the value of the property assessed.  The Debtor is aware of the following claims in this Class:

| | | |
|---|---|---|
| Johnston County Tax Office | $731.92 | |
| Onslow County Tax Collector | $83,780.94 | Claim # 8 |
| Pender County Tax Office | $78,665.89 | Claim # 7 |
| Surf City Tax Collector | $2,389.81 | Claim # 9 |

(2) <u>Impairment</u>.   This class will be unimpaired.

(3) <u>Treatment</u>.   The obligation to the Johnston County Tax Office was paid in full by RAC Property Development, Inc., as explained in the treatment for Class 4.  The remaining ad valorem taxes shall be paid from the net proceeds of sale, in

4

accordance with the priorities of the Code, such payment not to exceed five years from the Petition Date. Distributions to claims in this class shall be made from the closing proceeds.

**C.     Class 3 – Tax Claims:**

(1)     Description of Claims.  Class 3 consists of claims against the Debtor for income taxes, withholding taxes, unemployment taxes and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service or the North Carolina Department of Revenue plus interest as allowed by law. The Debtor is aware of the following claims in this Class:

North Carolina Department of Revenue     $8,044.00     Claim # 4

(2)     Impairment. This class will be unimpaired.

(3)     Treatment.  The Debtor proposes the following treatment

**Cost and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date.

**Unsecured priority tax claims** described in § 507(a)(8) of the Bankruptcy Code, if any, shall be paid in full in quarterly installments over a period not exceeding five (5) years from the Petition Date and payments shall commence on the fifteenth day of the first full month following the Effective Date, with interest at the statutory rate as of the Effective Date, currently four percent (4%) per annum.

**Secured claimants,** if any**,** shall retain their secured interest in the property of the Debtor.  The taxing authority shall retain its lien and secured status as to the underlying secured tax liability, plus accruing interest at the statutory rate, currently four percent (4%) per annum, from the Effective Date. The Debtor shall pay these claims from the net proceeds of sale, in accordance with the priorities of the Code.

Notwithstanding any other provisions of the Plan and the confirmation order, the North Carolina Department of Revenue shall retain any and all statutory tax liens that may have arisen by operation of statute, except to the extent that the treatment for the Secured Claimants in Class 3 expressly states that such tax lien will not be treated as secured or fully secured in the treatment for Class 3. Absent such express language in the treatment for Class 3,  any such lien may be ruled unenforceable by the Bankruptcy Court only upon the filing of a separate pleading and after notice and a hearing.

**Unsecured general tax claims,** if any, will be treated as provided below in the section relating to "General Unsecured Claims."

**D.     Class 4 – Branch Bank and Trust ("BB&T"):**

(1)  <u>Description of Debt</u>. The Debtor executed a promissory note in favor of BB&T, which was secured by a deed of trust granting BB&T a lien on 26.31 acres of undeveloped land on Cleveland Road located in Johnston County, North Carolina known as the Fuller Tract.  BB&T filed Claim Number 3 with respect to this obligation in the amount of $255,431.47 and Claim Number 11 in the amount of $293,796.06.

(2)  <u>Impairment</u>.   This class will be impaired.

(3)  <u>Treatment</u>.  Pursuant to an Order Approving Private Sale entered on May 14, 2010, the Debtor sold the Fuller Tract to RAC Property Development, Inc., which does business as "RAC Properties." (the "Buyer").  The Fuller Tract was sold free and clear of any and all liens, interests or encumbrances, in accordance with the Free and Clear Order entered on May 14, 2010.  The Buyer purchased the Fuller Tract from the Debtor on June 16, 2010 for $259,666.68.  The Buyer assumed all closing costs, current and past due ad valorem taxes on the property, including the Debtor's obligation to the Johnston County Tax Office, and agreed to pay BB&T a per diem of $39.77 from March 23, 2010 until June 16, 2010.  BB&T received the full purchase price of $259,666.68.  In addition, BB&T mistakenly filed two claims and asserts that Claim Number 11 is the correct amount.  The balance of BB&T's claim, if any, shall be treated in the General Unsecured Creditor Class.

### E.     <u>Class 5 – Crescent State Bank ("Crescent")</u>:

(1)  <u>Description of Debt</u>.  On or about June 2, 2006, the Debtor executed a promissory note in favor of Crescent in the principal amount of $600,000.00, which was secured by a deed of trust granting Crescent a lien on 49.02 acres consisting of 64 lots on Watts Landing Road located in Pender County, North Carolina, more commonly known as the Virginia Creek Tract.  The Debtor subsequently entered into loan modification agreements with Crescent, the most recent being dated March 27, 2009.  Crescent filed Claim Number 1 with respect to this obligation in the amount of $623,360.21.

(2)  <u>Impairment</u>.  This class will be impaired.

**(3)**  <u>Treatment.</u>  The Debtor has moved the Court to Approve the Private Sale of the Virginia Creek Tract and to sell the property free and clear of any and all liens or interests or encumbrances.  Donald Mason has objected to the private sale of the Virginia Creek Tract, by asserting that Crescent does not have a valid lien on the collateral.  In addition Crescent has moved the court for relief from the automatic stay.

Donald G. Fose and Kathleen D. Fose (collectively the "Foses") have offered to purchase the Virginia Creek Tract from the Debtor for the purchase price of $430,000.00.  Crescent has agreed to finance the Foses' purchase of the Virginia Creek Tract.  The entire purchase price of $430,000.00 will be disbursed to Crescent, at closing, unless it is determined that Crescent does not have a valid lien.  If Crescent does not have a valid lien, the proceeds will be distributed in accordance with the Bankruptcy Code.

F. **Class 6 – Donald R. Mason ("Mason"):**

(1) <u>Description of Debts</u>.  On or about September 23, 2009, a judgment was entered against the Debtor in Durham County Superior Court, in the matter of *Donald R. Mason v. Deuce Investments, Inc.* (09 CVS 003929), for money owed in the amount of $801,918.02.  Post-Judgment interest is accruing at the legal rate of interest of eight percent (8%) per annum.  The Judgment has been recorded in Onslow, Pender, Johnston, & New Hanover Counties.  Mason filed Claim Number 1 with respect to this obligation in the amount of $623,360.21.

(2) <u>Impairment</u>.  This class will be impaired.

(3) <u>Treatment.</u>  The Debtor shall treat this claim as follows:

a. The Debtor will treat this obligation as a secured obligation in an amount equal to the value of the collateral securing this claim, after taking into account all senior liens, including the cross-collateralization of any such liens.

b. Mason shall retain its lien up to the value of the collateral securing its claim, with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid as outlined herein.

c. At the Effective Date, the Mason Indebtedness shall thereafter bear interest at a rate of 5% per annum if permitted by Section 506(b).

a. Upon the closing of the sale of any lots that are the collateral securing the Mason Indebtedness, Mason shall receive the net proceeds of sale, after payment of all senior liens, as specified in Section V of the Plan.

b. The balance of the Mason Indebtedness, if any, shall be treated in the General Unsecured Creditor Class.

G. **Class 7 – SunTrust Bank ("SunTrust"):**

(1) <u>Description of Debt</u>.  The Debtor is indebted to this creditor in connection with the four (4) loans described below:

(a) <u>Loan # 91</u>: On or about August 26, 2006, the Debtor executed a promissory note in favor of SunTrust in the principal amount of $7,500,000.00, which was secured by a deed of trust that granted SunTrust a lien on 107.79 acres consisting of 105 lots, 13 acres of undeveloped land, and a sewer plant located on Majestic Oaks Drive off US Hwy 1 and Factory Road in Hampstead in Pender County, North Carolina ("Majestic Oaks Tract").  In April 2008, SunTrust was also granted liens on 146.80 acres consisting of 155 permitted single-family lots, 21 condo sites (116 units) on Morris Landing Road in Holly Ridge, Onslow County,

North Carolina ("Morris Landing Tract"); 231.07 acres consisting of 203 permitted single-family lots, 50 multi-family sites (250 units) on Folkstone Road, located 500 feet off US Hwy 17 in Holly Ridge, Onslow County, North Carolina ("Village at Folkstone Tract"); and 32.57 acres of undeveloped land preliminarily approved for 55 single-family lots on Old Folkstone Road in Sneads Ferry, Onslow County, North Carolina ("Permeta Branch Tract") as additional security for this obligation. As of the Petition Date, the Debtor estimated that it owed approximately $5,337,629.21 with respect to this obligation.

(b)    Loan # 59: On or about May 6 2006, the Debtor executed a promissory note in favor of SunTrust in the principal amount of $2,548,000.00, which was secured by a deed of trust granting SunTrust a lien on the Village at Folkstone Tract. In April 2008, SunTrust was also granted liens on the Morris Landing Tract, the Majestic Oaks Tract, and the Permeta Branch Tract as additional security for this obligation. As of the Petition Date, the Debtor estimated that it owed approximately $2,646,442.07 with respect to this obligation.

(c)    Loan # 75: On or about August 31, 2006, the Debtor executed a promissory note in favor of SunTrust in the principal amount of $5,000,000.00, which was secured by a deed of trust granting SunTrust a lien on the Morris Landing Tract. In April 2008, SunTrust was also granted liens on the Village at Folkstone Tract, the Majestic Oaks Tract, and the Permeta Branch Tract as additional security for this obligation. As of the Petition Date, the Debtor estimated that it owed approximately $2,460,903.23 with respect to this obligation.

(d)    Loan # 109: On or about December 5, 2006, the Debtor executed a promissory note in favor of SunTrust in the principal amount of $250,000.00, which was secured by a deed of trust granting SunTrust a lien on the Permeta Branch Tract. In April of 2008, SunTrust was also granted liens on the Village at Folkstone Tract, the Morris Landing Tract, and the Majestic Oaks Tract as additional collateral for this obligation  As of the Petition Date, the Debtor estimated that it owed approximately $259,696.09 with respect to this claim.

(2) Impairment. This class will be impaired.

(3)    Treatment. Pursuant to the Consent Order Granting Relief From the Automatic Stay, entered May 19, 2010, the Debtor has consented to SunTrust's foreclosure of all collateral securing its obligations. The balance of SunTrust's claims, if any, shall be treated in the General Unsecured Creditor Class.

H.    **Class 8 -Fose Properties, LLC ("Fose Properties"):**

(1)    Classification. On January 29, 2010, the Debtor entered into an executory contract ("Development Agreement") with Fose Properties whereby Fose Properties agreed to fund all of the expenses of development for the Permeta Branch Tract, the

Village at Folkstone Tract, the Morris Landing Tract, and the Virginia Creek Tract, according to the payments and terms of this Development Agreement.

(2) <u>Impairment</u>. This class will be impaired.

(3) <u>Treatment</u>.  Pursuant to § 365, the Debtor hereby rejects this executory contract.

    I.    **<u>Class 9 - General Unsecured Claims:</u>**

(1) <u>Description of Class</u>. This class consists of all allowed, undisputed, non-contingent unsecured claims listed in the Debtor's petition or as otherwise approved by the Court.

(2) <u>Impairment</u>. This class will be impaired.

(3) <u>Treatment.</u> All liquidated, allowed claims in this class will be paid from the net proceeds of the sale of the Debtor's assets as described in Section V of the Plan. All payments to this Class will be distributed pro rata to members of this Class in accordance with the procedures for distributions in Section V of the Plan.

The Debtor may investigate and pursue avoidance actions pursuant to 11 U.S.C. §§ 547 and 548. Any funds collected through such actions will be distributed in accordance with the priorities established by the Bankruptcy Code and Orders of this Court.

    J.    **<u>Class 10 - Equity Security Holders:</u>**

(1) <u>Classification</u>. This class consists of the members of the Debtor. The members of the Debtor are Linwood J. Jones (50%) and Donald E. Millard (50%).

(2) <u>Impairment</u>. This class will be impaired.

(3) <u>Treatment</u>. The equity security holders shall have their equity ownership in the Debtor canceled upon the Effective Date of the Plan. Equity Security Holders shall receive nothing from the Debtor on account of their ownership interests unless all senior classes are paid in full.

## IV. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as specified herein, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor. The Debtor

hereby assumes all leases currently in effect in which the Debtor is the lessor, except as may be otherwise specifically stated herein.

Any person with a Claim arising from such rejection shall be deemed to hold a general unsecured claim and shall file a proof of claim within sixty (60) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection.

### V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

A.   The Debtor proposes to pay its creditors under the Plan through the liquidation of its assets.

B.   <u>Sale Free and Clear of Liens</u>.  All real and personal property owned by the Debtor that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations.  In order to expedite the sale process, provide clear title to the properties sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to purchasers, the Debtor has also filed a separate motion seeking the approval of the sale of the property by private sale pursuant to the Development Agreement and a motion seeking to sell the property free and clear of liens. All real or personal property sold by the Debtor shall be sold free and clear of liens pursuant to this Plan and/or the free and clear order to be entered.

C.   <u>Reserve Account</u>. All proceeds remaining after distributions to all senior classes shall be deposited into an interest bearing escrow account ("Escrow Account") maintained by the Disbursing Agent.  Distributions shall commence only after all administrative and priority claims have been paid in full. Once distributions commence, they shall be made not less frequently than once every six months and shall be based on the amount of each unsecured creditor's claim as a percentage of the total claims; provided however, that disbursements shall not be required if the total amount in the Escrow Account is less than $50,000.00, unless all property of the Debtor has been liquidated and is available for distribution. When making such distributions to this class, the outstanding amount of all remaining secured claims shall be included in the calculation of any pro rata distribution to be made, but shall not be paid.  Instead, the portion allocated to the potential deficiency claims shall be deposited into a separate interest bearing account (the "Deficiency Account").  Funds in the Deficiency Account shall be held until such time as a determination can be made as to whether or not a secured creditor shall have a deficiency claim.  At the time of the determination of any secured creditor's deficiency claim, the portion which would have been paid to such secured creditor shall be paid from the Deficiency Account, not to exceed the percentage of claims paid to the unsecured creditors (i.e. if general unsecured creditors have received distributions totaling 20% if their allowed claims, the secured creditor shall receive 20% of its allowed deficiency claim) and thereafter, any remaining deficiency claim shall be included in any future distributions to unsecured creditors. In the event the Deficiency Account has excess funds after the required payments to any secured creditors from this account, the excess funds shall be distributed in accordance with the distribution priorities set forth above.

D. <u>Procedure for Deficiency Claims</u>. Any creditor asserting a deficiency claim shall file a proof of claim within the time period specified in the treatment for such creditor or within sixty (60) days of the Effective Date or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full. In the event the Debtor obtains its Final Decree prior to the deadline for filing such deficiency claim, such creditor shall inform the Disbursing Agent of such deficiency claim within the same time period. In such event, a proof of claim form shall not be required, but the creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the amount of such claim and an itemization of such claim.

E. Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code. No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

F. Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan. Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

G. All objections to claims, fee applications, and adversary proceedings will be filed with the Court within 60 days of the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

H. <u>Procedure for Payment of Professional Fees</u>. Current Court approved professionals shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

I. <u>Claims Paid by Third Parties</u>. To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not the Debtor, such creditor shall, within two (2) weeks therefore, inform the Debtor of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under this Plan.

     J.     The Debtor intends to maintain its current officers and management personnel subsequent to the Effective Date. Linwood Jones shall be the only officer or shareholder compensated by the Debtor and shall receive compensation in the form of a management fee in the amount of $18,000 per month, based on an hourly rate of $150.00 per hour, averaging 30 hours per week.

     K.     <u>Exemption from Transfer Taxes</u>.  All sale transactions consummated by the Debtor under this Plan will not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax in accordance with § 1146(c) of the Bankruptcy Code.

## VI.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, might be modified throughout the course of payment under this Plan. The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## VII.  PROVISIONS GOVERNING DISTRIBUTIONS

     A.     <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made:  (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or  (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

     B.     <u>Distribution Dates</u>.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

## VIII.  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

     A.     <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

     B.     <u>Acceptance by a Class of Creditors</u>.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

     C.     <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to vote if:

(1) Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed. The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2) Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3) Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4) Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D. <u>Confirmation Hearing</u>. The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E. <u>Acceptances Necessary to Confirm the Plan</u>. At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F. <u>Confirmation of Plan Without Necessary Acceptances</u>. The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes. In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class. In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Section IX herein, for confirmation pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code. In connection therewith,

the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1129(b)(2)(A).

## IX.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## X.  EFFECT OF CONFIRMATION

A. Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

B. <u>Injunction</u>.  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to § 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtors or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order.

## XI.  RELEASE OF TITLE TO PROPERTY

A. <u>Real Property</u>.  Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtor.  The failure of any such party to comply with this section shall  results in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by § 45-36.9(c) of the N.C. General Statutes.  Confirmation of this Plan

shall impose an affirmative and direct duty on each such secured party to comply with this provision. This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan. Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case. The Debtor specifically reserves the right to file a motion to reopen this case under § 350(b) of Title 11 of the United States Code to pursue the rights and claims provided for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XII. APPLICATION OF PLAN PAYMENTS

A. All payments made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor. In the event that a creditor is entitled to costs and/or attorneys fees post-petition under § 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys fees becoming part of the creditor's allowed claim. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with § 524(i).

B. Confirmation of the plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. § 524(i).

## XIII. RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of §§ 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1. to determine any and all objections to the allowance of claims and/or interests;

2. to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3. to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4. to determine all controversies and disputes arising under or in connection

with the Plan;

       5.    to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

       6.    to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

       7.    to determine such other matters and for such other purposes as may be provided for in the confirmation order;

       8.    to determine all disputes regarding property of the estate;

       9.    to establish and adjust procedures for the orderly administration of the estate;

       10.    to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

       11.    to replace the Debtor-in-Possession with a Trustee for good cause shown.

## XIV.  MISCELLANEOUS PROVISIONS

       A.    <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

       B.    <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

       C.    <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

       D.    <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

       E.    <u>Liens</u>.  All liens remaining in favor of any creditor in this action against the real property conveyed prior to the filing of the petition shall be deemed to be released upon confirmation of the Plan.  The Debtor shall request and all parties shall provide such additional documentation as may be necessary to effectuate these releases.

F.  <u>Incorporation of Disclosure</u>.  All the terms and conditions of the Disclosure Statement are incorporated herein by reference.

(This space intentionally left blank.)

Respectfully submitted, this the 18th day of June, 2010.

s/ Laurie B. Biggs
LAURIE B. BIGGS
N.C. State Bar No. 31845
Rebecca A. Scherrer
N.C. State Bar No. 35557
Attorneys for the Debtor
STUBBS & PERDUE, P.A.
8450 Falls of Neuse Road, Suite 206
Raleigh, NC 27615
(919) 870-6258
(919) 870-6259 Facsimile

DEUCE INVESTMENTS, INC.

By: _____
Don Millard
President
