FOR THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| In re ) | |
| ) | |
| DEUCE INVESTMENTS, INC., ) | Case No. 10-01083-8-RDD |
| ) | Chapter 11 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| DONALD R. MASON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Adv. Proc. # _____ |
| CRESCENT STATE BANK, and ) | |
| DEUCE INVESTMENTS, INC. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**COMPLAINT TO DETERMINE VALIDITY, PRIORITY AND EXTENT OF LIENS**

Plaintiff, Donald R. Mason (hereinafter "Mr. Mason" or "Plaintiff"), a secured creditor, alleges and says:

**The Parties and Jurisdiction**

1.      On February 12, 2010 (the "Petition Date"), Deuce Investments, Inc. (hereinafter "the Debtor"),  filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of North Carolina.

2.      This Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§151, 157 and 1334 and this is a core proceeding within 28 U.S.C. §157.

3.      Upon information and belief, the Debtor is a North Carolina corporation with its principal place of business in Johnston County, North Carolina.  The Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the Bankruptcy Code as of the Petition Date.

4.      Upon information and belief, Defendant, Crescent State Bank (hereinafter "Crescent"), is a North Carolina State Bank whose charter was granted by the North Carolina Commissioner of Banks on December 31, 1998.

5.      Upon information and belief, Crescent is the successor by merger with a bank once known as Port City Capital Bank.  For purposes of this action, Crescent and Port City Capital Bank are one and the same entity.

6.      Mr. Mason is a natural person under no legal disability and is a citizen and resident of Durham County, North Carolina.

7.      Mr. Mason is a Creditor of the Debtor.

<u>Statement of Facts</u>

8.      The Debtor was engaged in the acquisition and development of land for residential purposes before its financial demise.

9.      Crescent is a North Carolina State Bank which is in the business of making land acquisition and development loans for profit.

10.      Under North Carolina law, a Deed of Trust does not create a perfected security interest in Real Property until it is filed with the Register of Deeds in the County wherein the property lies.

11.      Under North Carolina law, a Deed of Trust must contain either a valid description of the land that it purports to convey that is sufficiently definitive to identify the land, or refer to something by which the land may be identified with certainty.  When a deed is not sufficiently

2

definitive to identify the land conveyed in Trust, the deed is void.  A description of land is considered to be patently ambiguous when there is uncertainty as to the land intended to be conveyed, and as such, may not be supplemented or explained with parol evidence.

12.    On June 2, 2006, the Debtor executed a document entitled "Real Estate Deed of Trust (With Future Advance Clause)" (hereinafter "Crescent DOT").  Exhibit A attached hereto is a true and accurate copy of the Crescent DOT as it was executed by the Debtor.

13.    Upon information and belief, there was no valid existing debt between the Debtor and Crescent on June 2, 2006.

14.    Upon information and belief, the Crescent DOT fails to secure any future advances that might have been made to the Debtor after June 2, 2006, because the Crescent DOT violated N.C. Gen. Stat. §45-68 in one or more respects, including but not limited to, the Crescent DOT's failure to properly identify any valid existing obligation owed from the Debtor to Crescent.

15.    Upon information and belief, no officer, director or other authorized representative of the Debtor agreed to change or modify the Crescent DOT after it was executed by the Debtor.

16.    As noted in Exhibit A, the entire description for the property conveyed in the Crescent DOT  is: "The property is located in Pender County at 49+/- acres McClammy Rd, Hampstead, North Carolina 28443-0000."

17.    As of June 2, 2006, the Debtor did not own any property on McClammy Road in Pender County, North Carolina.

18.    The Crescent DOT does not contain a valid property description and is, therefore, void.

19.    Upon information and belief, there are other reasons that the Crescent DOT is void.

3

20.    On June 21, 2006, the Debtor became the fee simple record owner of the following real property in Pender County, North Carolina:

a)    **Tract 1**

Beginning at an iron stake in the western line of the Virginia Creek Campground, LLC Tract (Deed Book 1726, Page 200), the southeast corner of the Kenneth P. Smith Tract (Deed Book 2490, Page 212); thence as the Virginia Creek Campground line South 52 degrees 34 minutes 30 seconds West 618.02 feet to an iron stake, a corner of the Gary Tillman Tract (Deed Book 1246, Page 161); thence as the Tillman line North 37 degrees 25 minutes 30 seconds West 130.00 feet to an iron stake; thence as the Tillman line South 52 degrees 34 minutes 20 seconds West 620.19 feet to a point on the edge of Virginia Creek; thence as the edge of Virginia Creek North 47 degrees 47 minutes 53 seconds West 233.85 feet to an iron stake, a corner of the Raheem Adolemaiu-Bey tract; thence as the Adolemaiu-Bey line North 52 degrees 34 minutes 30 seconds East 471.05 feet to an iron stake; thence North 38 degrees 54 minutes 00 seconds West 115.04 feet to an iron stake; thence South 52 degrees 34 minutes 30 seconds West 492.73 feet to the edge of Virginia Creek; thence as the edge of Virginia Creek North 46 degrees 32 minutes 53 seconds West 156.99 feet; thence North 21 degrees 05 minutes 14 seconds West 178.22 feet; thence North 60 degrees 42 minutes 00 seconds West 119.98 feet; thence North 71 degrees 33 minutes 54 seconds West 71.65 feet to the run of Poley Branch, a corner with Gertrude Clark; thence as the run of Poley Branch North 47 degrees 53 minutes 47 seconds East 142.82 feet; thence North 74 degrees 38 minutes 11 seconds East 143.92 feet; thence South 63 degrees 27 minutes 18 seconds East 131.86 feet; thence South 67 degrees 19 minutes 26 seconds East 103.40 feet; thence North 74 degrees 04 minutes 00 seconds East 63.14 feet; thence North 25 degrees 43 minutes 46 seconds East 51.95 feet; thence North 08 degrees 22 minutes 19 seconds East 132.14 feet; thence leaving Poley Branch and continuing with the Gertrude Clark line North 51 degrees 15 minutes 30 seconds East 167.00 feet to an iron stake; thence North 51 degrees 15 minutes 30 seconds East 377.95 feet to an iron stake; thence North 51 degrees 15 minutes 30 seconds East 216.35 feet to an iron stake, a corner with Gertrude Clark in the Kenneth Smith line; thence as the Smith line South 38 degrees 54 minutes 00 seconds East 830.29 feet to the point and place of beginning.

Containing 21.21 acres +/- and being a portion of tract #7 of the Henry McClammy Estate Division as shown on a map duly recorded in Map Book 19, Page 78 of the Pender County Registry.

4

Together with a 30 foot wide access easement as the same is shown on a map recorded in Map Book 41 at Page 150 of the Pender County Registry. Said easement lying on the southeastern most portion of the lands conveyed to Robert Lee Henderson by deed recorded in Book 892 at Page 334 of the Pender County Registry. Said easement extends from L4 as described on Map Book 41, Page 150, Slide 561 of the Pender County Registry to the waters of Virginia Creek.

**b)     Tract 2**

Beginning at an iron, a corner of Parmalee McClammy tract (tract #7 Map Book 19, Page 78) in the Kenneth P. Smith line (Deed Book 2490, Page 212); thence as the McClammy line South 51 degrees 15 minutes 30 seconds West 216.35 feet to an iron; thence South 51 degrees 15 minutes 30 seconds West 377.95 feet to an iron; thence South 51 degrees 15 minutes 30 seconds West 167.00 feet to a point in the run of Poley Branch; thence Southerly as the run of Poley Branch South 08 degrees 22 minutes 19 seconds West 132.14 feet; thence South 25 degrees 43 minutes 46 seconds West 51.95 feet; thence South 74 degrees 04 minutes 04 seconds West 63.14 feet; thence North 67 degrees 19 minutes 26 seconds West 103.40 feet; thence North 63 degrees 27 minutes 18 seconds West 131.86 feet; thence South 74 degrees 38 minutes 11 seconds West 143.92 feet; thence South 47 degrees 53 minutes 47 seconds West 142.82 feet to the edge of Virginia Creek; thence in a western direction along the edge of Virginia Creek North 71 degrees 33 minutes 54 seconds West 165.52 feet; thence North 49 degrees 23 minutes 55 seconds West 172.87 feet; thence North 34 degrees 59 minutes 31 seconds West 114.44 feet; thence North 07 degrees 45 minutes 55 seconds East 208.16 feet; thence North 00 degrees 00 minutes 00 seconds East 112.50 feet; thence North 26 degrees 33 minutes 54 seconds West 167.70 feet; thence North 05 degrees 00 minutes 38 seconds East 140.07 feet to an iron stake, a corner with Virginia Creek Forest (Plat Book 20, Page 107); thence as the line of Virginia Creek Forest North 71 degrees 56 minutes 30 seconds East 529.67 feet to an iron stake; thence North 57 degrees 59 minutes 00 seconds East 366.60 feet to an iron stake; thence South 79 degrees 30 minutes 00 seconds East 131.49 feet to an iron stake; thence South 84 degrees 33 minutes 00 seconds East 167.63 feet to an iron stake; thence North 86 degrees 49 minutes 30 seconds East 12.15 feet to an iron stake, a corner with Kenneth P. Smith; thence as the Smith line South 41 degrees 12 minutes 30 seconds East 637.84 feet to the point and place of beginning.

Containing 27.81 acres +/- and being all of tract 8 of the Henry McClammy Estate Division as shown on a map duly recorded in Map Book 19, Page 78 of the Pender County Registry.

Together with the following access easement:

**c)    <u>Tract 3</u>**

A 30 foot wide access easement extending from Watts Landing Road (NCSR 1560) to the Northeast corner of the Parmalee McClammy Tract (Tract #7 of the McClammy Estate Division, Map Book 19, Page 78) more particularly described as follows:

Beginning at a point in the centerline of Watts Landing Road (NCSR 1560*),* said beginning point being located South 47 degrees 10 minutes 30 seconds East 223.58 feet, South 48 degrees 37 minutes 00 seconds East 100.00 feet; South 54 degrees 12 minutes 00 seconds East 100.00 feet and South 56 degrees 27 minutes 00 seconds East 30.00 feet from a point in the centerline of NC Highway 210 set in the center of the culvert thru which flows the run of Poley Branch;

Thence from the above described beginning point, along the eastern right of way of McClammy Road and the western line of the Edgar L. Walker tract (Deed Book 1138, Page 126) South 33 degrees 33 minutes 00 seconds West 231.82 feet to a stake in the northern right of way line of McClammy Road; thence as the northern right of way line of McClammy Road South 55 degrees 20 minutes 45 seconds East 805.73 feet and South 34 degrees 32 minutes 15 seconds East 656.45 feet to an iron stake in the Ann J. King line (Deed Book 1548, Page 39); thence as the eastern right of way line of McClammy Road and the King line South 39 degrees 20 minutes 30 seconds West 1919.40 feet, South 52 degrees 34 minutes 30 seconds West 520.00 feet, South 52 degrees 34 minutes 30 seconds West 480.40 feet and South 52 degrees 34 minutes 30 seconds West 640.60 feet to the northeast corner of the Parmalee McClammy line North 38 degrees 54 minutes 00 seconds West 30.00 feet to an iron stake; thence in a northerly direction along the centerline of McClammy Road North 52 degrees 34 minutes 30 seconds East 642.09 feet to a point; thence North 52 degrees 34 minutes 30 seconds East 479.68 feet to a point; thence North 52 degrees 34 minutes 30 seconds East 516.52 feet to a point; thence North 39 degrees 20 minutes 30 seconds East 1893.36 feet; thence North 34 degrees 32 minutes 15 seconds West 628.38 feet; thence North 55 degrees 20 minutes 45 seconds West 829.65 feet; thence North 33 degrees 33 minutes 00 seconds East 260.95 feet to a

point in Watts Landing Road; thence South 57 degrees 02 minutes 09
seconds East 29.99 feet to the point and place of beginning.

Being a 30 foot roadway easement as shown on a map of the Henry
McClammy Estate Division, duly recorded in Map Book 19, Page 78
of the Pender County Registry.

d)    All three (3) tracts identified above are hereinafter collectively referred to
as "the Property".

21.    The Property has been referred to as the "Virginia Creek Tract" in some of the

following Bankruptcy Papers in the Debtor's Bankruptcy Case, which involve the Property:

| Docket # | Title of Document |
|----------|-------------------|
| 13 | Crescent Bank's Motion for Relief from Automatic Stay or for Adequate Protection |
| 66 | Debtor's Motion for Approval of Private Sale |
| 67 | Debtor's Motion to Sell Property Free and Clear of Liens and other Interests with Liens to Attach to Proceeds Pursuant to U.S.C. §363(f) |
| 92 | Donald R. Mason's Objection to Debtor's Proposed Sale of Virginia Creek Tract |

22.    On June 21, 2006, after the Property had been conveyed to the Debtor in valid

recorded deeds, the Crescent DOT was filed with the Register of Deeds of Pender County for the

first time.  Attached hereto as Exhibit B is a true and accurate copy of the Crescent DOT, as

recorded for the first time.

23.    Exhibit B did not create a security interest in the Property in favor of Crescent

because the Crescent DOT is void under North Carolina law.

24.    At no time subsequent to June 2, 2006, did the Debtor execute a valid Deed of Trust

for the benefit of Crescent.

25.     At no time subsequent to June 21, 2006, was a legally valid correction or re-filing made to the Crescent DOT that changes the fact that it is void and legally ineffective.

26.     On June 27, 2006, a materially altered version of the Crescent DOT was filed by a person other than the Debtor.  A copy of that filing is attached hereto as Exhibit C.  Exhibit C did not create a valid lien against the Property in favor of Crescent because the filing does not comply with the requirements of N.C. Gen. Stat. §47-36.1.  Among other defects, Exhibit C does not identify the capacity of the person making the re-recording; does not include the statutorily required affidavit; and, while the recording purports to add to Exhibits, the Crescent DOT was never amended to actually convey the Property described in those Exhibits.  Furthermore, in as much as the Crescent DOT is legally void and, therefore, conveys nothing to the Trustee or Crescent, any amendment to the Deed of Trust to include a proper legal description would not be filed under the provisions of N.C. Gen. Stat. §47-36.1, which only allows for correction of "typographical or other minor error in a deed..." *Id.*

27.     On June 28, 2006, another altered version of the Crescent DOT was filed with the Pender County Register of Deeds.  A copy of that filing is attached hereto as Exhibit D.  Exhibit D did not create a valid lien against the Property in favor of Crescent for the same reasons that Exhibit C did not.

28.     On September 14, 2009, the Superior Court of Durham County, North Carolina entered a judgment against the Debtor in favor of Mr. Mason.  A true and accurate copy of that judgment is attached hereto as Exhibit E.

29.     On September 23, 2009, Mr. Mason's judgment was transcribed to, and docketed on, the Pender County Judgment roll.

8

30.     Under North Carolina law, Mr. Mason's judgment is a valid secured lien on the Property with an effective priority date of September 23, 2009.

31.     As of July 9, 2010, the payoff on Mr. Mason's judgment is $927,033.41.  The per diem interest that continues to accrue is $175.7629.  See Exhibit F.

32.     The amount due Mr. Mason is certain, liquidated and not disputed by the Debtor or anyone else with standing to object.

## COUNT I
### Request for Declaratory Relief

33.     All other allegations of this Complaint are incorporated by reference and made a part of this Claim.

34.     The total amount due Mr. Mason on his judgment greatly exceeds the present fair market value of the Property, according to the Debtor's most recent statements with respect to the value of the Property.

35.     Upon information and belief, with the exception of any property taxes that may be due, Mr. Mason's judgment is the only legally valid lien on the Property.

36.     Since the amount of Mr. Mason's judgment greatly exceeds the present value of the Property, the Debtor has no equity in the Property and Mr. Mason is undersecured for the amount he is due.

37.     A controversy presently exists between the parties to this dispute because Crescent and the Debtor have claimed that the Crescent DOT is valid and has priority over Mr. Mason's judgment lien.

38.    Pursuant to Rule 7001(2) of the Bankruptcy Rules and 28 U.S.C. § 2201, Mr. Mason is entitled to a judgment declaring that the Crescent DOT is void, without legal effect, and that it does not attach to or apply to the Property.

39.    Mr. Mason, therefore, requests that the Court resolve the controversy between the parties by entering a declaratory judgment determining the validity, priority and extent of the liens or other security interests in the Property;

## COUNT II
### Objection to Crescent's Proof of Claim

40.    All other allegations of this Complaint are incorporated by reference and made a part of this Claim.

41.    On or about February 19, 2010, Crescent filed Proof of Claim # 1 in the Debtor's Bankruptcy case.

42.    In its Proof of Claim, Crescent claims to be owed over $600,000.00 secured by the Property.

43.    For the reasons stated above, Crescent does not have a valid security interest in the Property; Mr. Mason, therefore, objects to Crescent's claim to the extent that Crescent is claiming that its claim is secured by the Property.

44.    Mr. Mason requests that the Court enter an order rejecting Crescent's claimed security interest in the Property and declaring that the Property may be sold and conveyed free and clear of any lien or other claim of security for the benefit of Crescent or its successors in interest.

Wherefore, Mr. Mason requests that the Court grant the following relief:

(a)    Enter a declaratory judgment determining the validity, priority and extent of the liens or other security interests in the Property;

10

(b)      Grant Mr. Mason leave to proceed to have the Property sold free and clear of any lien or encumbrance from Crescent in order to partially satisfy Mr. Mason's Judgment against the Debtor;

(c)      In the alternative, in the event that the Court allows a sale of the Property during the pendency of this action; that the Court grant Mr. Mason a replacement security interest in the proceeds of any such sale and that the proceeds of any such sale be distributed directly to Mr. Mason's counsel for the benefit of Mr. Mason; and

(d)      Grant any further or other relief the Court my deem Mr. Mason entitled to.

This the 9th day of July 2010.

By:  /s/ William J. Wolf
William J. Wolf
N.C. State Bar #:  14357
Bugg & Wolf, P.A.
P.O. Box 2917
Durham, North Carolina 27715
(919) 383-9431 Telephone
(919) 383-9771 Facsimile
Email: wjwolf@buggwolf.com
Attorneys for Donald R. Mason

Z:\WP\Mason\Deuce\Pleadings- Mason v. Crescent etc\Drafts\Complaint.doc

## REAL ESTATE DEED OF TRUST
### (With Future Advance Clause)

This instrument was prepared by (name, address):
Port City Capital Bank
1508 Military Cutoff Rd


When recorded return to (name, address):
Port City Capital Bank
1508 Military Cutoff Rd Ste 100

Wilmington, NC  28403-0000

1. **DATE AND PARTIES.** The date of this Deed of Trust is _____June 2, 2006_____.
The parties and their addresses are:

   GRANTOR:
   Deuce Investments, Inc.
   1330 N. Brightleaf Blvd.
   Smithfield, NC 27577-0000

   ☐ Refer to the Addendum which is attached and incorporated herein for additional Grantors.

   TRUSTEE:
   W. Keith Betts
   1508 Military Cutoff Rd Ste 100
   Wilmington, NC  28403-0000

   LENDER:
   Port City Capital Bank
   1508 Military Cutoff Rd Ste 100
   Wilmington, NC  28403-0000

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (hereafter defined), Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of the Lender, with power of sale, the following described property:

The property is located in <u>Pender</u> at <u>49 +/- acres McClammy</u>
(County)
<u>Rd.</u> , <u>Hampstead</u> , North Carolina <u>28443-0000</u>
(Address)              (City)                                    (Zip Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount of the Secured Debt (hereafter defined) secured by this Deed of Trust at any one time shall not exceed $ <u>2,000,000.00</u> . This limitation of amount does not include interest, loan charges, commitment fees, brokerage commissions, attorneys' fees and other charges validly made pursuant to this Deed of Trust and does not apply to advances (or interest accrued on such advances) made under the terms of this Deed of Trust to protect Lender's security and to perform any of the covenants contained in this Deed of Trust. Future advances are contemplated and, along with other future obligations, are secured by this Deed of Trust even though all or part may not yet be advanced. Nothing in this Deed of Trust, however, shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment would need to be agreed to in a separate writing.

4. **SECURED DEBT DEFINED.** The term "Secured Debt" includes, but is not limited to, the following:
   A. The promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt) *(e.g., borrower's name, note amount, note date, interest rate, maturity date):*
   Present amount advanced of the secured obligation is $600,000.00
   promissory note dated 06/02/2006 in the amount of $600,000.00
   at an interest rate of Wall Street Journal Prime Rate plus 0.5000% with an
   original maturity date of 06/02/2007

   B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed within fifteen years after the date of this Deed of Trust whether or not this Deed of Trust is specifically referred to in the evidence of debt. This Deed of Trust is intended to comply with the provisions of Article 7, Chapter 45 NCGS.
   C. All obligations Grantor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Deed of Trust, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt.
   E. Grantor's performance under the terms of any instrument evidencing a debt by Grantor to Lender and any Deed of Trust securing, guarantying, or otherwise relating to the debt.

   If more than one person signs this Deed of Trust as Grantor, each Grantor agrees that this Deed of Trust will secure all future advances and future obligations described above that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. This Deed of Trust will not secure any other debt if Lender fails, with respect to such other debt, to make any required disclosure about this Deed of Trust or if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Grantor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Deed of Trust.

Mason v. Crescent                        Exhibit A
                                              Page 2 of 11

6. **WARRANTY OF TITLE.** Grantor covenants that Grantor is lawfully seized of the estate conveyed by this Deed of Trust and has the right to irrevocably grant, convey and sell to Trustee, in trust, with power of sale, the Property and warrants that the Property is unencumbered, except for encumbrances of record.

7. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Deed of Trust. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses which Grantor may have against parties who supply labor or materials to improve or maintain the Property.

8. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, or security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Deed of Trust, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to make or permit any modification or extension of, and not to request or accept any future advances under any note or agreement secured by, the other mortgage, deed of trust or security agreement unless Lender consents in writing.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property. However, if the Property includes Grantor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Deed of Trust is released.

10. **TRANSFER OF AN INTEREST IN THE GRANTOR.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if (1) a beneficial interest in Grantor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership or similar entity; or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity. However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Deed of Trust.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Grantor makes to Lender the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding:
   A. Grantor is an entity which is duly organized and validly existing in the Grantor's state of incorporation (or organization). Grantor is in good standing in all states in which Grantor transacts business. Grantor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Grantor operates.
   B. The execution, delivery and performance of this Deed of Trust by Grantor and the obligation evidenced by the Evidence of Debt are within the power of Grantor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
   C. Other than disclosed in writing Grantor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Grantor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor will give Lender prompt notice of any loss or damage to the Property. Grantor will keep the Property free of

*Experis®* © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-NC 10/7/2005 _____  *(page 3 of 11)*

noxious weeds and grasses. Grantor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Grantor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Grantor also agrees that the nature of the occupancy and use will not change without Lender's prior written consent.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Deed of Trust. Grantor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Grantor fails to perform any of Grantor's duties under this Deed of Trust, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Deed of Trust, Lender may, without notice, perform the duties or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may do whatever is necessary to protect Lender's security interest in the Property. This may include completing the construction.

Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Deed of Trust. Any amounts paid by Lender for insuring, preserving or otherwise protecting the Property and Lender's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Evidence of Debt.

14. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably assigns, grants, bargains and conveys to Lender as additional security all the right, title and interest in the following (Property).
   A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases);
   B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Grantor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).
In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Grantor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default. Grantor will not collect in advance any Rents due in future lease periods, unless Grantor first obtains Lender's written consent. Upon default, Grantor will receive any Rents in trust for Lender and Grantor will not commingle the Rents with any other funds. When Lender so directs, Grantor will endorse and deliver any payments of Rents from the

Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Grantor agrees that this Security Instrument is immediately effective between Grantor and Lender and effective as to third parties on the recording of this Assignment.

As long as this Assignment is in effect, Grantor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Grantor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Grantor or any party to the Lease defaults or fails to observe any applicable law, Grantor will promptly notify Lender. If Grantor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Grantor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Grantor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Grantor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

15. **CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16. **DEFAULT.** Grantor will be in default if any of the following occur:
    A. Any party obligated on the Secured Debt fails to make payment when due;
    B. A breach of any term or covenant in this Deed of Trust, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;
    C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Grantor or any person or entity obligated on the Secured Debt;
    D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Grantor or any person or entity obligated on the Secured Debt;
    E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
    F. A material adverse change in Grantor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
    G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Deed of Trust in a manner provided by law if this Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Deed of Trust and any related documents including without limitation, the power to sell the Property.

*Experts*® © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-NC 10/7/2005                                              *(page 5 of 11)*

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash, after having first given such notice of hearing as to commencement of foreclosure proceedings and obtained such findings or leave of court as may be then required by law, and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, including the Trustee's commission, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. The Trustee's commission shall be five percent of the gross proceeds of the sale for a completed foreclosure. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Deed of Trust. Grantor will also pay on demand all of Lender's expenses incurred in collecting, insuring, preserving or protecting the Property or in any inventories, audits, inspections or other examination in respect to the Property. Grantor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Deed of Trust, including, but not limited to, attorneys' fees, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Lender agrees to release this Deed of Trust and Grantor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Grantor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing:
   A. No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.
   B. Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.
   C. Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

*(page 6 of 11)*

Expere® © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-NC 10/7/2005

Mason v. Crescent

Exhibit A
Page 6 of 11

0-01083-8-RDD    Doc 118    Filed 07/09/10    Entered 07/09/10 16:08:59    Pa
66

D. Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Grantor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F. There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Deed of Trust and in return Grantor will provide Lender with collateral of at least equal value to the Property secured by this Deed of Trust without prejudice to any of Lender's rights under this Deed of Trust.

L. Notwithstanding any of the language contained in this Deed of Trust to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Deed of Trust regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

20. **CONDEMNATION.** Grantor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Grantor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Deed of Trust. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

21. **INSURANCE.** Grantor agrees to maintain insurance as follows:

A. Grantor shall keep the Property insured against loss by fire, theft and other hazards and risks reasonably associated with the Property due to its type and location. Other hazards and risks may include, for example, coverage against loss due to floods or flooding. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding three sentences can change during the

Expere® ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005          *(page 7 of 11)*

Mason v. Crescent          Exhibit A
Page 7 of 11

term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Deed of Trust.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "lender loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless Lender and Grantor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt, whether or not then due, with any excess paid to Grantor. If Grantor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Grantor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B. Grantor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C. Grantor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

22. **NO ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

23. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem necessary. Grantor warrants that all financial statements and information Grantor provides to Lender are, or will be, accurate, correct, and complete. Grantor agrees to sign, deliver, and file as Lender may reasonably request any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Deed of Trust and Lender's lien status on the Property. If Grantor fails to do so, Lender may sign, deliver, and file such documents or certificates in Grantor's name and Grantor hereby irrevocably appoints Lender or Lender's agent as attorney in fact to do the things necessary to comply with this section.

24. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Deed of Trust are joint and individual. If Grantor signs this Deed of Trust but does not sign the Evidence of Debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. Grantor agrees that Lender and any party to this Deed of Trust may extend, modify or make any change in the terms of this Deed of Trust or the Evidence of Debt without Grantor's consent. Such a change will not release Grantor from the terms of this Deed of Trust. The duties and benefits of this Deed of Trust shall bind and benefit the successors and assigns of Grantor and Lender.

If this Deed of Trust secures a guaranty between Lender and Grantor and does not directly secure the obligation which is guarantied, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws.

25. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Deed of Trust is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Deed of Trust is complete and fully integrated. This Deed of Trust may not be amended or modified by oral agreement. Any section or clause in this Deed of Trust, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Deed of Trust cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Deed of Trust. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Deed of Trust are for convenience only and are not to be used to interpret or define the terms of this Deed of Trust. Time is of the essence in this Deed of Trust.

26. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee by an instrument recorded in the county in which this Deed of Trust is recorded. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon the Trustee by this Deed of Trust and applicable law.

27. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Deed of Trust, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

28. **U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Deed of Trust:
    - ☐ **Construction Loan.** This Deed of Trust secures an obligation incurred for the construction of an improvement on the Property.
    - ☐ **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property.
    - ☐ **Crops; Timber; Minerals; Rents, Issues and Profits.** Grantor grants to Lender a security interest in all crops, timber and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").
    - ☐ **Personal Property.** Grantor grants to Lender a security interest in all personal property located on or connected with the Property. This security interest includes all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Grantor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property. The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.
    - ☐ **Filing As Financing Statement.** Grantor agrees and acknowledges that this Deed of Trust also suffices as a financing statement and as such, may be filed of record as a financing statement for purposes of Article 9 of the Uniform Commercial Code. A carbon, photographic, image or other reproduction of this Deed of Trust is sufficient as a financing statement.

Exp̱eres̱ © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-NC 10/7/2005

29. **OTHER TERMS.** If checked, the following are applicable to this Deed of Trust:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Deed of Trust will remain in effect until released.

☐ **Separate Assignment.** The Grantor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ **Additional Terms.**

**SIGNATURES:** By signing below under Seal, Grantor agrees to the terms and covenants contained in this Deed of Trust and in any attachments that Grantor has signed. Grantor also acknowledges receipt of a copy of this Deed of Trust on the date stated above on Page 1.

☐ Actual authority was granted to the parties signing below by resolution signed and dated
_____ .

Entity Name: Deuce Investments, Inc. _____    Entity Name: _____

_____ 06/02/2006 (Seal)    _____ (Seal)
(Signature)                (Date)                (Signature)                (Date)

_____ 6/02/2006 (Seal)    _____ (Seal)
(Signature)                (Date)                (Signature)                (Date)

Mason v. Crescent          Exhibit A
                           Page 10 of 11

**ACKNOWLEDGMENT:**

**(Individual)**

STATE OF_____ , COUNTY OF _____ } ss.

I _____ , do hereby certify that _____

_____ ,

who is/are known to me or proved to me on the basis of satisfactory evidence to be the person(s) described, personally appeared before me this day and acknowledged the due and voluntary execution of the foregoing instrument for the purpose stated therein.

Witness my hand and official seal, this the_____day of_____ .

My commission expires:

_____
(Notary Public)

**(Business or Entity Acknow-ledgment)**

STATE OF _NORTH CAROLINA_ , COUNTY OF _Pender_____ } ss.

I _MAURA JOHNSON_____ , certify that _DONALD EARL Millard_____

_(PRESIDENT) AND LINWOOD JACKSON JONES (Secretary)_____ ,

who is/are known to me or proved to me on the basis of satisfactory evidence to be the person(s) described, personally came before me this day and acknowledged that he/she is _PRESIDENT (Mr. Millard) and Secretary (Mr. JoNes)_____

of _DEUCE INVESTMENTS, INC._____ (Name of Business or Entity),

a _NORTH CAROLINA CORPORATION_____ ,

and that he/she, as _PRESIDENT AND Secretary_____ , being authorized to do so, voluntarily executed the foregoing instrument for the purpose stated therein on behalf of the corporation.

WITNESS my hand and official seal, this the_ 21 _day of _June_____ .

My commission expires:
Aug. 29, 2009

[Notary seal: MAURA JOHNSON NOTARY PUBLIC PENDER COUNTY NC]

_____
(Notary Public)

The Foregoing Certificate(s) of _____

_____

is/are certified to be correct. This instrument and this certificate are duly registered at the date and time in the Book and Page shown on the first page hereof.

_____ REGISTER OF DEEDS FOR _____ COUNTY

By _____ Deputy/Assistant-Register of Deeds

*(page 11 of 11)*

Express © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005 _____   _____   _____        _____

Mason v. Crescent        Exhibit A
Page 11 of 11



FILED

05 JUN 21  PM 2:59

JOYCE M. SWICEGOOD
REGISTER OF DEEDS
PENDER COUNTY, NC

BK 2985 PG 177

## REAL ESTATE DEED OF TRUST
(With Future Advance Clause)

This instrument was prepared by (name, address):
Port City Capital Bank
1508 Military Cutoff Rd

When recorded return to (name, address):
Port City Capital Bank
1508 Military Cutoff Rd Ste 100

Wilmington, NC  28403-0000

1. **DATE AND PARTIES.** The date of this Deed of Trust is _____June 2, 2006_____.
The parties and their addresses are:

GRANTOR:
Deuce Investments, Inc.
1330 N. Brightleaf Blvd.
Smithfield, NC 27577-0000

☐ Refer to the Addendum which is attached and incorporated herein for additional Grantors.

TRUSTEE:
      W. Keith Betts
      1508 Military Cutoff Rd Ste 100
      Wilmington, NC  28403-0000

LENDER:
      Port City Capital Bank
      1508 Military Cutoff Rd Ste 100
      Wilmington, NC  28403-0000

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is
acknowledged, and to secure the Secured Debt (hereafter defined), Grantor irrevocably grants,
conveys and sells to Trustee, in trust for the benefit of the Lender, with power of sale, the
following described property:

---

NORTH CAROLINA - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT
(NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)
*Experé* © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005
*(page 1 of 11)*

Mason v. Crescent       Exhibit B
       Page 1 of 11

The property is located in <u>Pender</u>      at <u>49 +/- acres McClammy</u>
                       (County)
<u>Rd.</u>         , <u>Hampstead</u>    , North Carolina   <u>28443-0000</u>
       (Address)          (City)                     (Zip Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount of the Secured Debt (hereafter defined) secured by this Deed of Trust at any one time shall not exceed $  <u>2,000,000.00</u> . This limitation of amount does not include interest, loan charges, commitment fees, brokerage commissions, attorneys' fees and other charges validly made pursuant to this Deed of Trust and does not apply to advances (or interest accrued on such advances) made under the terms of this Deed of Trust to protect Lender's security and to perform any of the covenants contained in this Deed of Trust. Future advances are contemplated and, along with other future obligations, are secured by this Deed of Trust even though all or part may not yet be advanced. Nothing in this Deed of Trust, however, shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment would need to be agreed to in a separate writing.

4. **SECURED DEBT DEFINED.** The term "Secured Debt" includes, but is not limited to, the following:
   A. The promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt) *(e.g., borrower's name, note amount, note date, interest rate, maturity date):*
   Present amount advanced of the secured obligation is $600,000.00
   promissory note dated 06/02/2006 in the amount of $600,000.00
   at an interest rate of Wall Street Journal Prime Rate plus 0.5000% with an
   original maturity date of 06/02/2007

   B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed within fifteen years after the date of this Deed of Trust whether or not this Deed of Trust is specifically referred to in the evidence of debt. This Deed of Trust is intended to comply with the provisions of Article 7, Chapter 45 NCGS.
   C. All obligations Grantor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Deed of Trust, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt.
   E. Grantor's performance under the terms of any instrument evidencing a debt by Grantor to Lender and any Deed of Trust securing, guarantying, or otherwise relating to the debt.

   If more than one person signs this Deed of Trust as Grantor, each Grantor agrees that this Deed of Trust will secure all future advances and future obligations described above that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. This Deed of Trust will not secure any other debt if Lender fails, with respect to such other debt, to make any required disclosure about this Deed of Trust or if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Grantor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Deed of Trust.

Experts® © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005             *(page 2 of 11)*

6. **WARRANTY OF TITLE.** Grantor covenants that Grantor is lawfully seized of the estate conveyed by this Deed of Trust and has the right to irrevocably grant, convey and sell to Trustee, in trust, with power of sale, the Property and warrants that the Property is unencumbered, except for encumbrances of record.

7. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Deed of Trust. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses which Grantor may have against parties who supply labor or materials to improve or maintain the Property.

8. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, or security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Deed of Trust, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to make or permit any modification or extension of, and not to request or accept any future advances under any note or agreement secured by, the other mortgage, deed of trust or security agreement unless Lender consents in writing.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property. However, if the Property includes Grantor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Deed of Trust is released.

10. **TRANSFER OF AN INTEREST IN THE GRANTOR.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if (1) a beneficial interest in Grantor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership or similar entity; or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity. However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Deed of Trust.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Grantor makes to Lender the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding:
   A. Grantor is an entity which is duly organized and validly existing in the Grantor's state of incorporation (or organization). Grantor is in good standing in all states in which Grantor transacts business. Grantor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Grantor operates.
   B. The execution, delivery and performance of this Deed of Trust by Grantor and the obligation evidenced by the Evidence of Debt are within the power of Grantor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
   C. Other than disclosed in writing Grantor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Grantor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor will give Lender prompt notice of any loss or damage to the Property. Grantor will keep the Property free of

Mason v. Crescent

Exhibit B
Page 3 of 11

noxious weeds and grasses. Grantor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Grantor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Grantor also agrees that the nature of the occupancy and use will not change without Lender's prior written consent.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Deed of Trust. Grantor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Grantor fails to perform any of Grantor's duties under this Deed of Trust, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Deed of Trust, Lender may, without notice, perform the duties or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may do whatever is necessary to protect Lender's security interest in the Property. This may include completing the construction.

Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Deed of Trust. Any amounts paid by Lender for insuring, preserving or otherwise protecting the Property and Lender's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Evidence of Debt.

14. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably assigns, grants, bargains and conveys to Lender as additional security all the right, title and interest in the following (Property).
   A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases);
   B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Grantor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).
In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Grantor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default. Grantor will not collect in advance any Rents due in future lease periods, unless Grantor first obtains Lender's written consent. Upon default, Grantor will receive any Rents in trust for Lender and Grantor will not commingle the Rents with any other funds. When Lender so directs, Grantor will endorse and deliver any payments of Rents from the

Mason v. Crescent                    Exhibit B
                                     Page 4 of 11

Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Grantor agrees that this Security Instrument is immediately effective between Grantor and Lender and effective as to third parties on the recording of this Assignment.

As long as this Assignment is in effect, Grantor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Grantor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Grantor or any party to the Lease defaults or fails to observe any applicable law, Grantor will promptly notify Lender. If Grantor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Grantor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Grantor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Grantor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

15. **CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16. **DEFAULT.** Grantor will be in default if any of the following occur:
   A. Any party obligated on the Secured Debt fails to make payment when due;
   B. A breach of any term or covenant in this Deed of Trust, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;
   C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Grantor or any person or entity obligated on the Secured Debt;
   D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Grantor or any person or entity obligated on the Secured Debt;
   E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
   F. A material adverse change in Grantor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
   G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Deed of Trust in a manner provided by law if this Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Deed of Trust and any related documents including without limitation, the power to sell the Property.

*Exper̃es* © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005    *(page 5 of 11)*

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash, after having first given such notice of hearing as to commencement of foreclosure proceedings and obtained such findings or leave of court as may be then required by law, and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and *deliver a deed* to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, including the Trustee's commission, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. The Trustee's commission shall be five percent of the gross proceeds of the sale for a completed foreclosure. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by *law*, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Deed of Trust. Grantor will also pay *on demand* all of Lender's expenses incurred in collecting, insuring, preserving or protecting the Property or in any *inventories*, audits, inspections or other examination by Lender in respect to the Property. Grantor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Deed of Trust, including, but not limited to, attorneys' fees, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Lender agrees to release this Deed of Trust and Grantor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has *characteristics* which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. *The term* includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Grantor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing:
   A. No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.
   B. Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.
   C. Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

*(page 6 of 11)*

Mason v. Crescent

Exhibit B
Page 6 of 11

D. Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Grantor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F. There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Deed of Trust and in return Grantor will provide Lender with collateral of at least equal value to the Property secured by this Deed of Trust without prejudice to any of Lender's rights under this Deed of Trust.

L. Notwithstanding any of the language contained in this Deed of Trust to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Deed of Trust regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

20. **CONDEMNATION.** Grantor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Grantor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Deed of Trust. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

21. **INSURANCE.** Grantor agrees to maintain insurance as follows:

A. Grantor shall keep the Property insured against loss by fire, theft and other hazards and risks reasonably associated with the Property due to its type and location. Other hazards and risks may include, for example, coverage against loss due to floods or flooding. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding three sentences can change during the

Experts® ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005

Mason v. Crescent                Exhibit B
Page 7 of 11

term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Deed of Trust.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "lender loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless Lender and Grantor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt, whether or not then due, with any excess paid to Grantor. If Grantor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Grantor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B. Grantor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C. Grantor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

22. **NO ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

23. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem necessary. Grantor warrants that all financial statements and information Grantor provides to Lender are, or will be, accurate, correct, and complete. Grantor agrees to sign, deliver, and file as Lender may reasonably request any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Deed of Trust and Lender's lien status on the Property. If Grantor fails to do so, Lender may sign, deliver, and file such documents or certificates in Grantor's name and Grantor hereby irrevocably appoints Lender or Lender's agent as attorney in fact to do the things necessary to comply with this section.

24. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Deed of Trust are joint and individual. If Grantor signs this Deed of Trust but does not sign the Evidence of Debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. Grantor agrees that Lender and any party to this Deed of Trust may extend, modify or make any change in the terms of this Deed of Trust or the Evidence of Debt without Grantor's consent. Such a change will not release Grantor from the terms of this Deed of Trust. The duties and benefits of this Deed of Trust shall bind and benefit the successors and assigns of Grantor and Lender.

If this Deed of Trust secures a guaranty between Lender and Grantor and does not directly secure the obligation which is guarantied, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws.

25. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Deed of Trust is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Deed of Trust is complete and fully integrated. This Deed of Trust may not be amended or modified by oral agreement. Any section or clause in this Deed of Trust, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Deed of Trust cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Deed of Trust. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Deed of Trust are for convenience only and are not to be used to interpret or define the terms of this Deed of Trust. Time is of the essence in this Deed of Trust.

26. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee by an instrument recorded in the county in which this Deed of Trust is recorded. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon the Trustee by this Deed of Trust and applicable law.

27. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Deed of Trust, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

28. **U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Deed of Trust:
    - ☐ **Construction Loan.** This Deed of Trust secures an obligation incurred for the construction of an improvement on the Property.
    - ☐ **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property.
    - ☐ **Crops; Timber; Minerals; Rents, Issues and Profits.** Grantor grants to Lender a security interest in all crops, timber and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").
    - ☐ **Personal Property.** Grantor grants to Lender a security interest in all personal property located on or connected with the Property. This security interest includes all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Grantor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property. The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.
    - ☐ **Filing As Financing Statement.** Grantor agrees and acknowledges that this Deed of Trust also suffices as a financing statement and as such, may be filed of record as a financing statement for purposes of Article 9 of the Uniform Commercial Code. A carbon, photographic, image or other reproduction of this Deed of Trust is sufficient as a financing statement.

Express® © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-NC 10/7/2005

(page 9 of 11)

BK 2985 PG 686

**29. OTHER TERMS.** If checked, the following are applicable to this Deed of Trust:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Deed of Trust will remain in effect until released.

☐ **Separate Assignment.** The Grantor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ **Additional Terms.**

**SIGNATURES:** By signing below under Seal, Grantor agrees to the terms and covenants contained in this Deed of Trust and in any attachments that Grantor has signed. Grantor also acknowledges receipt of a copy of this Deed of Trust on the date stated above on Page 1.

☐ Actual authority was granted to the parties signing below by resolution signed and dated _____ .

Entity Name: Deuce Investments, Inc. _____        Entity Name: _____

_____ 06/02/2006 (Seal)        _____ (Seal)
(Signature)                              (Date)                        (Signature)                          (Date)

_____ 6/02/2006 (Seal)        _____ (Seal)
(Signature)                              (Date)                        (Signature)                          (Date)

Mason v. Crescent                    Exhibit B
                                     Page 10 of 11

**ACKNOWLEDGMENT:**

**(Individual)**

STATE OF_____ , COUNTY OF _____ } ss.

I _____ , do hereby certify that _____

_____ ,

who is/are known to me or proved to me on the basis of satisfactory evidence to be the person(s) described, personally appeared before me this day and acknowledged the due and voluntary execution of the foregoing instrument for the purpose stated therein.

Witness my hand and official seal, this the_____day of_____ .

My commission expires:

_____
(Notary Public)

**(Business or Entity Acknow-ledgment)**

STATE OF NORTH CAROLINA , COUNTY OF Pender _____ } ss.

I MAURA JOHNSON _____ , certify that DONALD EARL Millard _____

(PRESIDENT) AND LINWOOD JACKSON JONES (Secretary) _____ ,

who is/are known to me or proved to me on the basis of satisfactory evidence to be the person(s) described, personally came before me this day and acknowledged that he/she is PRESIDENT (Mr. Millard) and Secretary (Mr. Jones) _____

of Deuce Investments , INC. _____(Name of Business or Entity),

a NORTH CAROLINA CORPORATION _____ ,

and that he/she, as PRESIDENT AND Secretary _____ , being authorized to do so, voluntarily executed the foregoing instrument for the purpose stated therein on behalf of the corporation.

WITNESS my hand and official seal, this the 21 day of June _____ .

My commission expires:
Aug. 29, 2009

_____
(Notary Public)

**NOTARY PUBLIC** — MAURA JOHNSON — PENDER COUNTY NC

The Foregoing Certificate(s) of _____

_____

is/are certified to be correct. This instrument and this certificate are duly registered at the date and time in the Book and Page shown on the first page hereof.

_____REGISTER OF DEEDS FOR _____COUNTY

By _____ Deputy/Assistant-Register of Deeds

*(page 11 of 11)*

Express © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005 _____   _____   _____

BK2988PG271

BK2985PG177

FILED

FILED

06 JUN 27 AM 9: 59   06 JUN 21 PM 2: 59

JOYCE M. SWICEGOOD
REGISTER OF DEEDS
PENDER COUNTY, NC

JOYCE M. SWICEGOOD
REGISTER OF DEEDS
PENDER COUNTY, NC

Recorded and Verified
Joyce M. Swicegood
Register of Deeds
Pender County, NC

## REAL ESTATE DEED OF TRUST
### (With Future Advance Clause)

This instrument was prepared by (name, address):
   Port City Capital Bank
   1508 Military Cutoff Rd

When recorded return to (name, address):
   Port City Capital Bank
   1508 Military Cutoff Rd Ste 100

   Wilmington, NC  28403-0000

1. **DATE AND PARTIES.** The date of this Deed of Trust is ____June 2, 2006_____ .
The parties and their addresses are:

GRANTOR:
Deuce Investments, Inc.
1330 N. Brightleaf Blvd.
Smithfield, NC 27577-0000

☐ Refer to the Addendum which is attached and incorporated herein for additional Grantors.

TRUSTEE:
     W. Keith Betts
     1508 Military Cutoff Rd Ste 100
     Wilmington, NC  28403-0000

LENDER:
     Port City Capital Bank
     1508 Military Cutoff Rd Ste 100
     Wilmington, NC  28403-0000

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (hereafter defined), Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of the Lender, with power of sale, the following described property:

NORTH CAROLINA - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT
(NOT FOR FNMA, FHLMC, FHA OR VA USE, *AND NOT FOR CONSUMER PURPOSES*)
Experts® © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005

*(page 1 of 11)*

Mason v. Crescent

Exhibit C
Page 1 of 15

The property is located in Pender 9 DE 2 7.9 66 at 49 +/- acres McClammy
BK2988P0266                     (County)
Rd.                             , Hampstead          , North Carolina    28443-0000
    (Address)                        (City)                                 (Zip Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount of the Secured Debt (hereafter defined) secured by this Deed of Trust at any one time shall not exceed $   2,000,000.00   . This limitation of amount does not include interest, loan charges, commitment fees, brokerage commissions, attorneys' fees and other charges validly made pursuant to this Deed of Trust and does not apply to advances (or interest accrued on such advances) made under the terms of this Deed of Trust to protect Lender's security and to perform any of the covenants contained in this Deed of Trust. Future advances are contemplated and, along with other future obligations, are secured by this Deed of Trust even though all or part may not yet be advanced. Nothing in this Deed of Trust, however, shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment would need to be agreed to in a separate writing.

4. **SECURED DEBT DEFINED.** The term "Secured Debt" includes, but is not limited to, the following:
   A. The promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt) *(e.g., borrower's name, note amount, note date, interest rate, maturity date)*:
   Present amount advanced of the secured obligation is $600,000.00
   promissory note dated 06/02/2006 in the amount of $600,000.00
   at an interest rate of Wall Street Journal Prime Rate plus 0.5000% with an
   original maturity date of 06/02/2007

   B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed within fifteen years after the date of this Deed of Trust whether or not this Deed of Trust is specifically referred to in the evidence of debt. This Deed of Trust is intended to comply with the provisions of Article 7, Chapter 45 NCGS.
   C. All obligations Grantor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Deed of Trust, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt.
   E. Grantor's performance under the terms of any instrument evidencing a debt by Grantor to Lender and any Deed of Trust securing, guarantying, or otherwise relating to the debt.

   If more than one person signs this Deed of Trust as Grantor, each Grantor agrees that this Deed of Trust will secure all future advances and future obligations described above that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. This Deed of Trust will not secure any other debt if Lender fails, with respect to such other debt, to make any required disclosure about this Deed of Trust or if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Grantor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Deed of Trust.

Expere® ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005                    *(page 2 of 11)*

6. **WARRANTY OF TITLE.** Grantor covenants that Grantor is lawfully seized of the estate conveyed by this Deed of Trust and has the right to irrevocably grant, convey and sell to Trustee, in trust, with power of sale, the Property and warrants that the Property is unencumbered, except for encumbrances of record.

7. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Deed of Trust. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses which Grantor may have against parties who supply labor or materials to improve or maintain the Property.

8. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, or security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Deed of Trust, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to make or permit any modification or extension of, and not to request or accept any future advances under any note or agreement secured by, the other mortgage, deed of trust or security agreement unless Lender consents in writing.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property. However, if the Property includes Grantor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Deed of Trust is released.

10. **TRANSFER OF AN INTEREST IN THE GRANTOR.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if (1) a beneficial interest in Grantor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership or similar entity; or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity. However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Deed of Trust.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Grantor makes to Lender the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding:
   A. Grantor is an entity which is duly organized and validly existing in the Grantor's state of incorporation (or organization). Grantor is in good standing in all states in which Grantor transacts business. Grantor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Grantor operates.
   B. The execution, delivery and performance of this Deed of Trust by Grantor and the obligation evidenced by the Evidence of Debt are within the power of Grantor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
   C. Other than disclosed in writing Grantor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Grantor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor will give Lender prompt notice of any loss or damage to the Property. Grantor will keep the Property free of

noxious weeds and grasses. Grantor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Grantor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Grantor also agrees that the nature of the occupancy and use will not change without Lender's prior written consent.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Deed of Trust. Grantor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Grantor fails to perform any of Grantor's duties under this Deed of Trust, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Deed of Trust, Lender may, without notice, perform the duties or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may do whatever is necessary to protect Lender's security interest in the Property. This may include completing the construction.

Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Deed of Trust. Any amounts paid by Lender for insuring, preserving or otherwise protecting the Property and Lender's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Evidence of Debt.

14. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably assigns, grants, bargains and conveys to Lender as additional security all the right, title and interest in the following (Property).
   A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases);
   B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Grantor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).
In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Grantor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default. Grantor will not collect in advance any Rents due in future lease periods, unless Grantor first obtains Lender's written consent. Upon default, Grantor will receive any Rents in trust for Lender and Grantor will not commingle the Rents with any other funds. When Lender so directs, Grantor will endorse and deliver any payments of Rents from the

Experе® © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005

*(page 4 of 11)*

Mason v. Crescent

Exhibit C
Page 4 of 15

Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Grantor agrees that this Security Instrument is immediately effective between Grantor and Lender and effective as to third parties on the recording of this Assignment.

As long as this Assignment is in effect, Grantor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Grantor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Grantor or any party to the Lease defaults or fails to observe any applicable law, Grantor will promptly notify Lender. If Grantor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Grantor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Grantor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Grantor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

15. **CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16. **DEFAULT.** Grantor will be in default if any of the following occur:
   A. Any party obligated on the Secured Debt fails to make payment when due;
   B. A breach of any term or covenant in this Deed of Trust, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;
   C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Grantor or any person or entity obligated on the Secured Debt;
   D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Grantor or any person or entity obligated on the Secured Debt;
   E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
   F. A material adverse change in Grantor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
   G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Deed of Trust in a manner provided by law if this Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Deed of Trust and any related documents including without limitation, the power to sell the Property.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash, after having first given such notice of hearing as to commencement of foreclosure proceedings and obtained such findings or leave of court as may be then required by law, and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, including the Trustee's commission, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. The Trustee's commission shall be five percent of the gross proceeds of the sale for a completed foreclosure. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Deed of Trust. Grantor will also pay on demand all of Lender's expenses incurred in collecting, insuring, preserving or protecting the Property or in any inventories, audits, inspections or other examination by Lender in respect to the Property. Grantor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Deed of Trust, including, but not limited to, attorneys' fees, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Lender agrees to release this Deed of Trust and Grantor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Grantor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing:

   A. No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.
   B. Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.
   C. Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

Express® © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005

*(page 6 of 11)*

    D. Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

    E. Grantor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

    F. There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

    G. Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

    H. Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.

    I. Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

    J. Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

    K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Deed of Trust and in return Grantor will provide Lender with collateral of at least equal value to the Property secured by this Deed of Trust without prejudice to any of Lender's rights under this Deed of Trust.

    L. Notwithstanding any of the language contained in this Deed of Trust to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Deed of Trust regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**20. CONDEMNATION.** Grantor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Grantor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Deed of Trust. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**21. INSURANCE.** Grantor agrees to maintain insurance as follows:

    A. Grantor shall keep the Property insured against loss by fire, theft and other hazards and risks reasonably associated with the Property due to its type and location. Other hazards and risks may include, for example, coverage against loss due to floods or flooding. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding three sentences can change during the

Express® © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005    *(page 7 of 11)*

Mason v. Crescent       Exhibit C
Page 7 of 15

term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Deed of Trust.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "lender loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless Lender and Grantor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt, whether or not then due, with any excess paid to Grantor. If Grantor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Grantor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B. Grantor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C. Grantor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

22. **NO ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

23. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem necessary. Grantor warrants that all financial statements and information Grantor provides to Lender are, or will be, accurate, correct, and complete. Grantor agrees to sign, deliver, and file as Lender may reasonably request any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Deed of Trust and Lender's lien status on the Property. If Grantor fails to do so, Lender may sign, deliver, and file such documents or certificates in Grantor's name and Grantor hereby irrevocably appoints Lender or Lender's agent as attorney in fact to do the things necessary to comply with this section.

24. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Deed of Trust are joint and individual. If Grantor signs this Deed of Trust but does not sign the Evidence of Debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. Grantor agrees that Lender and any party to this Deed of Trust may extend, modify or make any change in the terms of this Deed of Trust or the Evidence of Debt without Grantor's consent. Such a change will not release Grantor from the terms of this Deed of Trust. The duties and benefits of this Deed of Trust shall bind and benefit the successors and assigns of Grantor and Lender.

Experº © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005

*(page 8 of 11)*

If this Deed of Trust secures a guaranty between Lender and Grantor and does not directly secure the obligation which is guarantied, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws.

25. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Deed of Trust is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Deed of Trust is complete and fully integrated. This Deed of Trust may not be amended or modified by oral agreement. Any section or clause in this Deed of Trust, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Deed of Trust cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Deed of Trust. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Deed of Trust are for convenience only and are not to be used to interpret or define the terms of this Deed of Trust. Time is of the essence in this Deed of Trust.

26. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee by an instrument recorded in the county in which this Deed of Trust is recorded. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon the Trustee by this Deed of Trust and applicable law.

27. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Deed of Trust, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

28. **U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Deed of Trust:
   ☐ **Construction Loan.** This Deed of Trust secures an obligation incurred for the construction of an improvement on the Property.
   ☐ **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property.
   ☐ **Crops; Timber; Minerals; Rents, Issues and Profits.** Grantor grants to Lender a security interest in all crops, timber and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").
   ☐ **Personal Property.** Grantor grants to Lender a security interest in all personal property located on or connected with the Property. This security interest includes all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Grantor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property. The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.
   ☐ **Filing As Financing Statement.** Grantor agrees and acknowledges that this Deed of Trust also suffices as a financing statement and as such, may be filed of record as a financing statement for purposes of Article 9 of the Uniform Commercial Code. A carbon, photographic, image or other reproduction of this Deed of Trust is sufficient as a financing statement.

Express ® © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005          *(page 9 of 11)*

**29. OTHER TERMS.** If checked, the following are applicable to this Deed of Trust:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Deed of Trust will remain in effect until released.

☐ **Separate Assignment.** The Grantor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ **Additional Terms.**

**SIGNATURES:** By signing below under Seal, Grantor agrees to the terms and covenants contained in this Deed of Trust and in any attachments that Grantor has signed. Grantor also acknowledges receipt of a copy of this Deed of Trust on the date stated above on Page 1.

☐ Actual authority was granted to the parties signing below by resolution signed and dated
_____ .

Entity Name: Deuce Investments, Inc. _____     Entity Name: _____

_____ 06/02/2006 (Seal)     _____ (Seal)
(Signature)               (Date)                 (Signature)            (Date)

_____ 6/02/2006 (Seal)     _____ (Seal)
(Signature)               (Date)                 (Signature)            (Date)

Mason v. Crescent                    Exhibit C
                                     Page 10 of 15

**ACKNOWLEDGMENT:**

(Individual)

STATE OF_____, COUNTY OF _____ } ss.

I _____, do hereby certify that _____

_____,
who is/are known to me or proved to me on the basis of satisfactory evidence to be the person(s) described, personally appeared before me this day and acknowledged the due and voluntary execution of the foregoing instrument for the purpose stated therein.
Witness my hand and official seal, this the_____ day of_____.
My commission expires:

_____
(Notary Public)

(Business or Entity Acknowledgment)

STATE OF NORTH CAROLINA , COUNTY OF Pender _____ } ss.

I MAURA JOHNSON _____, certify that DONALD EARL Millard
(PRESIDENT) AND LINWOOD JACKSON JONES (Secretary) _____,
who is/are known to me or proved to me on the basis of satisfactory evidence to be the person(s) described, personally came before me this day and acknowledged that he/she is
PRESIDENT and Secretary (MR. JONES)
of DEUCE INVESTMENTS, INC. (Name of Business or Entity),
a NORTH CAROLINA CORPORATION _____,
and that he/she, as PRESIDENT AND Secretary , being authorized to do so, voluntarily executed the foregoing instrument for the purpose stated therein on behalf of the corporation.
WITNESS my hand and official seal, this the 21 day of June .

My commission expires:
Aug. 29, 2009

_____
(Notary Public)

The Foregoing Certificate(s) of _____

_____

is/are certified to be correct. This instrument and this certificate are duly registered at the date and time in the Book and Page shown on the first page hereof.
_____ REGISTER OF DEEDS FOR _____ COUNTY
By_____ Deputy/Assistant-Register of Deeds

Expere® © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005

Mason v. Crescent

Exhibit C
Page 11 of 15

BK2988PG282

**EXHIBIT "A"**

1. **Tract #1**

Beginning at an iron stake in the western line of the Virginia Creek Campground, LLC Tract (Deed Book 1726, Page 200), the southeast corner of the Kenneth P. Smith Tract (Deed Book 2490, Page 212); thence as the Virginia Creek Campground line South 52 degrees 34 minutes 30 seconds West 618.02 feet to an iron stake, a corner of the Gary Tillman Tract (Deed Book 1246, Page 161); thence as the Tillman line North 37 degrees 25 minutes 30 seconds West 130.00 feet to an iron stake; thence as the Tillman line South 52 degrees 34 minutes 20 seconds West 620.19 feet to a point on the edge of Virginia Creek; thence as the edge of Virginia Creek North 47 degrees 47 minutes 53 seconds West 233.85 feet to an iron stake, a corner of the Raheem Adolemaiu-Bey tract; thence as the Adolemaiu-Bey line North 52 degrees 34 minutes 30 seconds East 471.05 feet to an iron stake; thence North 38 degrees 54 minutes 00 seconds West 115.04 feet to an iron stake; thence South 52 degrees 34 minutes 30 seconds West 492.73 feet to the edge of Virginia Creek; thence as the edge of Virginia Creek North 46 degrees 32 minutes 53 seconds West 156.99 feet; thence North 21 degrees 05 minutes 14 seconds West 178.22 feet; thence North 60 degrees 42 minutes 00 seconds West 119.98 feet; thence North 71 degrees 33 minutes 54 seconds West 71.65 feet to the run of Poley Branch, a corner with Gertrude Clark; thence as the run of Poley Branch North 47 degrees 53 minutes 47 seconds East 142.82 feet; thence North 74 degrees 38 minutes 11 seconds East 143.92 feet; thence South 63 degrees 27 minutes 18 seconds East 131.86 feet; thence South 67 degrees 19 minutes 26 seconds East 103.40 feet; thence North 74 degrees 04 minutes 04 seconds East 63.14 feet; thence North 25 degrees 43 minutes 46 seconds East 51.95 feet; thence North 08 degrees 22 minutes 19 seconds East 132.14 feet; thence leaving Poley Branch and continuing with the Gertrude Clark line North 51 degrees 15 minutes 30 seconds East 167.00 feet to an iron stake; thence North 51 degrees 15 minutes 30 seconds East 377.95 feet to an iron stake; thence North 51 degrees 15 minutes 30 seconds East 216.35 feet to an iron stake, a corner with Gertrude Clark in the Kenneth Smith line; thence as the Smith line South 38 degrees 54 minutes 00 seconds East 830.29 feet to the point and place of beginning.

Containing 21.21 acres +/- and being a portion of tract #7 of the Henry McClammy Estate Division as shown on a map duly recorded in Map Book 19, Page 78 of the Pender County Registry.

Together with an access easement described on Exhibit "B" attached hereto and incorporated herein by reference.

Together with a 30 foot wide access easement as the same is shown on a map recorded in Map Book 41 at Page 150 of the Pender County Registry. Said easement lying on the southeastern most portion of the lands conveyed to Robert Lee Henderson by deed recorded in Book 892 at Page 334 of the Pender County Registry. Said easement extends from L4 as described on Map Book 41, Page 150, Slide 561 of the Pender County Registry to the waters of Virginia Creek.

**EXHIBIT "A"**

**Tract #2**

Beginning at an iron, a corner of Parmalee McClammy tract (tract #7 Map Book 19, Page 78) in the Kenneth P. Smith line (Deed Book 2490, Page 212); thence as the McClammy line South 51 degrees 15 minutes 30 seconds West 216.35 feet to an iron; thence South 51 degrees 15 minutes 30 seconds West 377.95 feet to an iron; thence South 51 degrees 15 minutes 30 seconds West 167.00 feet to a point in the run of Poley Branch; thence Southerly as the run of Poley Branch South 08 degrees 22 minutes 19 seconds West 132.14 feet; thence South 25 degrees 43 minutes 46 seconds West 51.95 feet; thence South 74 degrees 04 minutes 04 seconds West 63.14 feet; thence North 67 degrees 19 minutes 26 seconds West 103.40 feet; thence North 63 degrees 27 minutes 18 seconds West 131.86 feet; thence South 74 degrees 38 minutes 11 seconds West 143.92 feet; thence South 47 degrees 53 minutes 47 seconds West 142.82 feet to the edge of Virginia Creek; thence in a western direction along the edge of Virginia Creek North 71 degrees 33 minutes 54 seconds West 165.52 feet; thence North 49 degrees 23 minutes 55 seconds West 172.87 feet; thence North 34 degrees 59 minutes 31 seconds West 114.44 feet; thence North 07 degrees 45 minutes 55 seconds East 208.16 feet; thence North 00 degrees 00 minutes 00 seconds East 112.50 feet; thence North 26 degrees 33 minutes 54 seconds West 167.70 feet; thence North 05 degrees 00 minutes 38 seconds East 140.07 feet to an iron stake, a corner with Virginia Creek Forest (Plat Book 20, Page 107); thence as the line of Virginia Creek Forest North 71 degrees 56 minutes 30 seconds East 529.67 feet to an iron stake; thence North 57 degrees 59 minutes 00 seconds East 366.60 feet to an iron stake; thence South 79 degrees 30 minutes 00 seconds East 131.49 feet to an iron stake; thence South 84 degrees 33 minutes 00 seconds East 167.63 feet to an iron stake; thence North 86 degrees 49 minutes 30 seconds East 12.15 feet to an iron stake, a corner with Kenneth P. Smith; thence as the Smith line South 41 degrees 12 minutes 30 seconds East 637.84 feet to the point and place of beginning.

Containing 27.81 acres +/- and being all of tract 8 of the Henry McClammy Estate Division as shown on a map duly recorded in Map Book 19, Page 78 of the Pender County Registry.

Together with the following access easement described on Exhibit "B" attached hereto and incorporated herein by reference.

BK 2 9 8 8 PG 2 8 4

## EXHIBIT "B"

**Tract #3**

A 30 foot wide access easement extending from Watts Landing Road (NCSR 1560) to the Northeast corner of the Parmalee McClammy Tract (Tract #7 of the McClammy Estate Division, Map Book 19, Page 78) more particularly described as follows:

Beginning at a point in the centerline of Watts Landing Road (NCSR 1560), said beginning point being located South 47 degrees 10 minutes 30 seconds East 223.58 feet, South 48 degrees 37 minutes 00 seconds East 100.00 feet; South 54 degrees 12 minutes 00 seconds East 100.00 feet and South 56 degrees 27 minutes 00 seconds East 30.00 feet from a point in the centerline of NC Highway 210 set in the center of the culvert thru which flows the run of Poley Branch;

Thence from the above described beginning point, along the eastern right of way of McClammy Road and the western line of the Edgar L. Walker tract (Deed Book 1138, Page 126) South 33 degrees 33 minutes 00 seconds West 231.82 feet to a stake in the northern right of way line of McClammy Road; thence as the northern right of way line of McClammy Road South 55 degrees 20 minutes 45 seconds East 805.73 feet and South 34 degrees 32 minutes 15 seconds East 656.45 feet to an iron stake in the Ann J. King line (Deed Book 1548, Page 39); thence as the eastern right of way line of McClammy Road and the King line South 39 degrees 20 minutes 30 seconds West 1919.40 feet, South 52 degrees 34 minutes 30 seconds West 520.00 feet, South 52 degrees 34 minutes 30 seconds West 480.40 feet and South 52 degrees 34 minutes 30 seconds West 640.60 feet to the northeast corner of the Parmalee McClammy line North 38 degrees 54 minutes 00 seconds West 30.00 feet to an iron stake; thence in a northerly direction along the centerline of McClammy Road North 52 degrees 34 minutes 30 seconds East 642.09 feet to a point; thence North 52 degrees 34 minutes 30 seconds East 479.68 feet to a point; thence North 52 degrees 34 minutes 30 seconds East 516.52 feet to a point; thence North 39 degrees 20 minutes 30 seconds East 1893.36 feet; thence North 34 degrees 32 minutes 15 seconds West 628.38 feet; thence North 55 degrees 20 minutes 45 seconds West 829.65 feet; thence North 33 degrees 33 minutes 00 seconds East 260.95 feet to a point in Watts Landing Road; thence South 57 degrees 02 minutes 09 seconds East 29.99 feet to the point and place of beginning.

Being a 30 foot roadway easement as shown on a map of the Henry McClammy Estate Division, duly recorded in Map Book 19, Page 78 of the Pender County Registry.

Mason v. Crescent                    Exhibit C
                                     Page 14 of 15

EXPLANATION STATEMENT TO CORRECT OBVIOUS MINOR ERROR(S)
MADE IN AN INSTRUMENT AS ORIGINALLY RECORDED

RE: BOOK _2985_

PAGE _177_

RECORDED IN THE _Pender_ COUNTY REGISTRY

NAMES OF ALL PARTIES TO THE ORIGINAL INSTRUMENT: _Deed of TRUST_

GRANTORS: _Deuce INVestments, INC._

GRANTEES: _PORT City CAPITAL BANK_

STATE OF NORTH CAROLINA
COUNTY OF _Pender_

    I/WE, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOLLOWING
CORRECTIONS ARE MADE IN THE ABOVE NAMED RECORDED INSTRUMENT IN ACCORDANCE
WITH THE PROVISIONS OF G.S. 47-36.1 RATIFIED JUNE 30, 1986 AND AMENDED
BY HOUSE BILL 969, 1987 SESSION.

DESCRIPTION OF CORRECTION(S): _ADD EXHIBITS A (tRACt #1,_
_tRACt #2) AND B (tRACt #3)_
_Legal DESCRIPTIONS_
_____
_____
_____
_____
_____.

THE SIGNING PARTY(IES) IS(ARE):

◯ THE PARTIES WHO SIGNED THE ORIGINAL INSTRUMENT.

◯ THE ATTORNEY WHO DRAFTED THE ORIGINAL INSTRUMENT.

THIS, THE _27th_ DAY OF _June, 2006,_ _____, ____.

_Maura Johnson_

THIS EXPLANATION STATEMENT TOGETHER WITH THE ATTACHED INSTRUMENT DULY
RERECORDED AT _____ O'CLOCK _____ .M. THIS THE _____ DAY OF _____
_____, _____ IN THE BOOK AND PAGE SHOWN ON THE FIRST
PAGE HEREOF.

_____   BY: _____
REGISTER OF DEEDS               ASSISTANT-DEPUTY REGISTER OF DEEDS

BK2985PG177

FILED

06 JUN 27 AM 9:59

JOYCE M. SWICEGOOD
REGISTER OF DEEDS
PENDER COUNTY, NC

FILED

06 JUN 21 PH 2:59

JOYCE M. SWICEGOOD
REGISTER OF DEEDS
PENDER COUNTY, NC

Recorded and Verified
Joyce M. Swicegood
Register of Deeds
Pender County, NC

Recorded and Verified
Joyce M. Swicegood
Register of Deeds
Pender County, NC

# REAL ESTATE DEED OF TRUST
### (With Future Advance Clause)

This instrument was prepared by (name, address):
Port City Capital Bank
1508 Military Cutoff Rd

FILED

06 JUL 28 PH 3:26

JOYCE M. SWICEGOOD
REGISTER OF DEEDS
PENDER COUNTY, NC

When recorded return to (name, address):
Port City Capital Bank
1508 Military Cutoff Rd Ste 100

Wilmington, NC 28403-0000

1. **DATE AND PARTIES.** The date of this Deed of Trust is _____June 2, 2006_____
The parties and their addresses are:

GRANTOR:
Deuce Investments, Inc.
1330 N. Brightleaf Blvd.
Smithfield, NC 27577-0000

☐ Refer to the Addendum which is attached and incorporated herein for additional Grantors.

TRUSTEE:
W. Keith Betts
1508 Military Cutoff Rd Ste 100
Wilmington, NC 28403-0000

LENDER:
Port City Capital Bank
1508 Military Cutoff Rd Ste 100
Wilmington, NC 28403-0000

BK3014PG219

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (hereafter defined), Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of the Lender, with power of sale, the following described property:

NORTH CAROLINA - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT
(NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)
Experð © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005

*(page 1 of 11)*

The property is located in _____ (County) at _49 +/- acres McClammy_
Rd._____, _Hampstead_, North Carolina _28443-0000_
    (Address)       (City)        (Zip Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established.

**3. MAXIMUM OBLIGATION LIMIT.** The total principal amount of the Secured Debt (hereafter defined) secured by this Deed of Trust at any one time shall not exceed $ _2,000,000.00_. This limitation of amount does not include interest, loan charges, commitment fees, brokerage commissions, attorneys' fees and other charges validly made pursuant to this Deed of Trust and does not apply to advances (or interest accrued on such advances) made under the terms of this Deed of Trust to protect Lender's security and to perform any of the covenants contained in this Deed of Trust. Future advances are contemplated and, along with other future obligations, are secured by this Deed of Trust even though all or part may not yet be advanced. Nothing in this Deed of Trust, however, shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment would need to be agreed to in a separate writing.

**4. SECURED DEBT DEFINED.** The term "Secured Debt" includes, but is not limited to, the following:
    A. The promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt) *(e.g., borrower's name, note amount, note date, interest rate, maturity date):*
    Present amount advanced of the secured obligation is $600,000.00
    promissory note dated 06/02/2006 in the amount of $600,000.00
    at an interest rate of Wall Street Journal Prime Rate plus 0.5000% with an
    original maturity date of 06/02/2007

    B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed within fifteen years after the date of this Deed of Trust whether or not this Deed of Trust is specifically referred to in the evidence of debt. This Deed of Trust is intended to comply with the provisions of Article 7, Chapter 45 NCGS.
    C. All obligations Grantor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.
    D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Deed of Trust, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt.
    E. Grantor's performance under the terms of any instrument evidencing a debt by Grantor to Lender and any Deed of Trust securing, guarantying, or otherwise relating to the debt.

If more than one person signs this Deed of Trust as Grantor, each Grantor agrees that this Deed of Trust will secure all future advances and future obligations described above that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. This Deed of Trust will not secure any other debt if Lender fails, with respect to such other debt, to make any required disclosure about this Deed of Trust or if Lender fails to give any required notice of the right of rescission.

**5. PAYMENTS.** Grantor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Deed of Trust.

Expere® © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005     *(page 2 of 11)*

Mason v. Crescent

Exhibit D
Page 2 of 16

6. **WARRANTY OF TITLE.** Grantor covenants that Grantor is lawfully seized of the estate conveyed by this Deed of Trust and has the right to irrevocably grant, convey and sell to Trustee, in trust, with power of sale, the Property and warrants that the Property is unencumbered, except for encumbrances of record.

7. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Deed of Trust. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses which Grantor may have against parties who supply labor or materials to improve or maintain the Property.

8. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, or security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Deed of Trust, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to make or permit any modification or extension of, and not to request or accept any future advances under any note or agreement secured by, the other mortgage, deed of trust or security agreement unless Lender consents in writing.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property. However, if the Property includes Grantor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Deed of Trust is released.

10. **TRANSFER OF AN INTEREST IN THE GRANTOR.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if (1) a beneficial interest in Grantor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership or similar entity; or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity. However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Deed of Trust.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Grantor makes to Lender the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding:
   A. Grantor is an entity which is duly organized and validly existing in the Grantor's state of incorporation (or organization). Grantor is in good standing in all states in which Grantor transacts business. Grantor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Grantor operates.
   B. The execution, delivery and performance of this Deed of Trust by Grantor and the obligation evidenced by the Evidence of Debt are within the power of Grantor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
   C. Other than disclosed in writing Grantor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Grantor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor will give Lender prompt notice of any loss or damage to the Property. Grantor will keep the Property free of

Express © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005                    *(page 3 of 11)*

noxious weeds and grasses. Grantor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Grantor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Grantor also agrees that the nature of the occupancy and use will not change without Lender's prior written consent.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Deed of Trust. Grantor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Grantor fails to perform any of Grantor's duties under this Deed of Trust, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Deed of Trust, Lender may, without notice, perform the duties or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may do whatever is necessary to protect Lender's security interest in the Property. This may include completing the construction.

Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Deed of Trust. Any amounts paid by Lender for insuring, preserving or otherwise protecting the Property and Lender's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Debt.

14. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably assigns, grants, bargains and conveys to Lender as additional security all the right, title and interest in the following (Property).
   A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases);
   B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Grantor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).
In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Grantor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default. Grantor will not collect in advance any Rents due in future lease periods, unless Grantor first obtains Lender's written consent. Upon default, Grantor will receive any Rents in trust for Lender and Grantor will not commingle the Rents with any other funds. When Lender so directs, Grantor will endorse and deliver any payments of Rents from the

Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Grantor agrees that this Security Instrument is immediately effective between Grantor and Lender and effective as to third parties on the recording of this Assignment.

As long as this Assignment is in effect, Grantor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Grantor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Grantor or any party to the Lease defaults or fails to observe any applicable law, Grantor will promptly notify Lender. If Grantor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Grantor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Grantor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Grantor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

15. **CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16. **DEFAULT.** Grantor will be in default if any of the following occur:
   A. Any party obligated on the Secured Debt fails to make payment when due;
   B. A breach of any term or covenant in this Deed of Trust, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;
   C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Grantor or any person or entity obligated on the Secured Debt;
   D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Grantor or any person or entity obligated on the Secured Debt;
   E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
   F. A material adverse change in Grantor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
   G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Deed of Trust in a manner provided by law if this Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Deed of Trust and any related documents including without limitation, the power to sell the Property.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash, after having first given such notice of hearing as to commencement of foreclosure proceedings and obtained such findings or leave of court as may be then required by law, and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, including the Trustee's commission, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. The Trustee's commission shall be five percent of the gross proceeds of the sale for a completed foreclosure. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Deed of Trust. Grantor will also pay on demand all of Lender's expenses incurred in collecting, insuring, preserving or protecting the Property or in any inventories, audits, inspections or other examination by Lender in respect to the Property. Grantor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Deed of Trust, including, but not limited to, attorneys' fees, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Lender agrees to release this Deed of Trust and Grantor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Grantor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing:
   A. No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.
   B. Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.
   C. Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

Experts® ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005

*(page 6 of 11)*

D. Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Grantor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F. There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Deed of Trust and in return Grantor will provide Lender with collateral of at least equal value to the Property secured by this Deed of Trust without prejudice to any of Lender's rights under this Deed of Trust.

L. Notwithstanding any of the language contained in this Deed of Trust to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Deed of Trust regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

20. **CONDEMNATION.** Grantor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Grantor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Deed of Trust. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

21. **INSURANCE.** Grantor agrees to maintain insurance as follows:
A. Grantor shall keep the Property insured against loss by fire, theft and other hazards and risks reasonably associated with the Property due to its type and location. Other hazards and risks may include, for example, coverage against loss due to floods or flooding. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding three sentences can change during the

term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Deed of Trust.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "lender loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless Lender and Grantor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt, whether or not then due, with any excess paid to Grantor. If Grantor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Grantor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B. Grantor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C. Grantor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

22. **NO ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

23. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem necessary. Grantor warrants that all financial statements and information Grantor provides to Lender are, or will be, accurate, correct, and complete. Grantor agrees to sign, deliver, and file as Lender may reasonably request any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Deed of Trust and Lender's lien status on the Property. If Grantor fails to do so, Lender may sign, deliver, and file such documents or certificates in Grantor's name and Grantor hereby irrevocably appoints Lender or Lender's agent as attorney in fact to do the things necessary to comply with this section.

24. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Deed of Trust are joint and individual. If Grantor signs this Deed of Trust but does not sign the Evidence of Debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. Grantor agrees that Lender and any party to this Deed of Trust may extend, modify or make any change in the terms of this Deed of Trust or the Evidence of Debt without Grantor's consent. Such a change will not release Grantor from the terms of this Deed of Trust. The duties and benefits of this Deed of Trust shall bind and benefit the successors and assigns of Grantor and Lender.

Express © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005
*(page 8 of 11)*

If this Deed of Trust secures a guaranty between Lender and Grantor and does not directly secure the obligation which is guarantied, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws.

**25. APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Deed of Trust is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Deed of Trust is complete and fully integrated. This Deed of Trust may not be amended or modified by oral agreement. Any section or clause in this Deed of Trust, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Deed of Trust cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Deed of Trust. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Deed of Trust are for convenience only and are not to be used to interpret or define the terms of this Deed of Trust. Time is of the essence in this Deed of Trust.

**26. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee by an instrument recorded in the county in which this Deed of Trust is recorded. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon the Trustee by this Deed of Trust and applicable law.

**27. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Deed of Trust, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

**28. U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Deed of Trust:

☐ **Construction Loan.** This Deed of Trust secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property.

☐ **Crops; Timber; Minerals; Rents, Issues and Profits.** Grantor grants to Lender a security interest in all crops, timber and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

☐ **Personal Property.** Grantor grants to Lender a security interest in all personal property located on or connected with the Property. This security interest includes all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Grantor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property. The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☐ **Filing As Financing Statement.** Grantor agrees and acknowledges that this Deed of Trust also suffices as a financing statement and as such, may be filed of record as a financing statement for purposes of Article 9 of the Uniform Commercial Code. A carbon, photographic, image or other reproduction of this Deed of Trust is sufficient as a financing statement.

Mason v. Crescent                    Exhibit D
                                     Page 9 of 16

**29. OTHER TERMS.** If checked, the following are applicable to this Deed of Trust:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Deed of Trust will remain in effect until released.

☐ **Separate Assignment.** The Grantor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ **Additional Terms.**

**SIGNATURES:** By signing below under Seal, Grantor agrees to the terms and covenants contained in this Deed of Trust and in any attachments that Grantor has signed. Grantor also acknowledges receipt of a copy of this Deed of Trust on the date stated above on Page 1.

☐ Actual authority was granted to the parties signing below by resolution signed and dated _____ .

Entity Name: Deuce Investments, Inc.                    Entity Name: _____

_____ 06/02/2006 (Seal)        _____ (Seal)
(Signature)            (Date)                (Signature)            (Date)

_____ 6/02/2006 (Seal)         _____ (Seal)
(Signature)            (Date)                (Signature)            (Date)

Expere® © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-NC  10/7/2005

Mason v. Crescent                    Exhibit D
                                     Page 10 of 16

BK2988PG282  BK3014PG229

1. Tract #1

Beginning at an iron stake in the western line of the Virginia Creek Campground, LLC Tract (Deed Book 1726, Page 200), the southeast corner of the Kenneth P. Smith Tract (Deed Book 2490, Page 212); thence as the Virginia Creek Campground line South 52 degrees 34 minutes 30 seconds West 618.02 feet to an iron stake, a corner of the Gary Tillman Tract (Deed Book 1246, Page 161); thence as the Tillman line North 37 degrees 25 minutes 30 seconds West 130.00 feet to an iron stake; thence as the Tillman line South 52 degrees 34 minutes 20 seconds West 620.19 feet to a point on the edge of Virginia Creek; thence as the edge of Virginia Creek North 47 degrees 47 minutes 53 seconds West 233.85 feet to an iron stake, a corner of the Raheem Adolemaiu-Bey tract; thence as the Adolemaiu-Bey line North 52 degrees 34 minutes 30 seconds East 471.05 feet to an iron stake; thence North 38 degrees 54 minutes 00 seconds West 115.04 feet to an iron stake; thence South 52 degrees 34 minutes 30 seconds West 492.73 feet to the edge of Virginia Creek; thence as the edge of Virginia Creek North 46 degrees 32 minutes 53 seconds West 156.99 feet; thence North 21 degrees 05 minutes 14 seconds West 178.22 feet; thence North 60 degrees 42 minutes 00 seconds West 119.98 feet; thence North 71 degrees 33 minutes 54 seconds West 71.65 feet to the run of Poley Branch, a corner with Gertrude Clark; thence as the run of Poley Branch North 47 degrees 53 minutes 47 seconds East 142.82 feet; thence North 74 degrees 38 minutes 11 seconds East 143.92 feet; thence South 63 degrees 27 minutes 18 seconds East 131.86 feet; thence South 67 degrees 19 minutes 26 seconds East 103.40 feet; thence North 74 degrees 04 minutes 04 seconds East 63.14 feet; thence North 25 degrees 43 minutes 46 seconds East 51.95 feet; thence North 08 degrees 22 minutes 19 seconds East 132.14 feet; thence leaving Poley Branch and continuing with the Gertrude Clark line North 51 degrees 15 minutes 30 seconds East 167.00 feet to an iron stake; thence North 51 degrees 15 minutes 30 seconds East 377.95 feet to an iron stake; thence North 51 degrees 15 minutes 30 seconds East 216.35 feet to an iron stake, a corner with Gertrude Clark in the Kenneth Smith line; thence as the Smith line South 38 degrees 54 minutes 00 seconds East 830.29 feet to the point and place of beginning.

Containing 21.21 acres +/- and being a portion of tract #7 of the Henry McClammy Estate Division as shown on a map duly recorded in Map Book 19, Page 78 of the Pender County Registry.

Together with an access easement described on Exhibit "B" attached hereto and incorporated herein by reference.

Together with a 30 foot wide access easement as the same is shown on a map recorded in Map Book 41 at Page 150 of the Pender County Registry. Said easement lying on the southeastern most portion of the lands conveyed to Robert Lee Henderson by deed recorded in Book 892 at Page 334 of the Pender County Registry. Said easement extends from L4 as described on Map Book 41, Page 150, Slide 561 of the Pender County Registry to the waters of Virginia Creek.

BK3014PG230

## EXHIBIT "A"

**Tract #2**

Beginning at an iron, a corner of Parmalee McClammy tract (tract #7 Map Book 19, Page 78) in the Kenneth P. Smith line (Deed Book 2490, Page 212); thence as the McClammy line South 51 degrees 15 minutes 30 seconds West 216.35 feet to an iron; thence South 51 degrees 15 minutes 30 seconds West 377.95 feet to an iron; thence South 51 degrees 15 minutes 30 seconds West 167.00 feet to a point in the run of Poley Branch; thence Southerly as the run of Poley Branch South 08 degrees 22 minutes 19 seconds West 132.14 feet; thence South 25 degrees 43 minutes 46 seconds West 51.95 feet; thence South 74 degrees 04 minutes 04 seconds West 63.14 feet; thence North 67 degrees 19 minutes 26 seconds West 103.40 feet; thence North 63 degrees 27 minutes 18 seconds West 131.86 feet; thence South 74 degrees 38 minutes 11 seconds West 143.92 feet; thence South 47 degrees 53 minutes 47 seconds West 142.82 feet to the edge of Virginia Creek; thence in a western direction along the edge of Virginia Creek North 71 degrees 33 minutes 54 seconds West 165.52 feet; thence North 49 degrees 23 minutes 55 seconds West 172.87 feet; thence North 34 degrees 59 minutes 31 seconds West 114.44 feet; thence North 07 degrees 45 minutes 55 seconds East 208.16 feet; thence North 00 degrees 00 minutes 00 seconds East 112.50 feet; thence North 26 degrees 33 minutes 54 seconds West 167.70 feet; thence North 05 degrees 00 minutes 38 seconds East 140.07 feet to an iron stake, a corner with Virginia Creek Forest (Plat Book 20, Page 107); thence as the line of Virginia Creek Forest North 71 degrees 56 minutes 30 seconds East 529.67 feet to an iron stake; thence North 57 degrees 59 minutes 00 seconds East 366.60 feet to an iron stake; thence South 79 degrees 30 minutes 00 seconds East 131.49 feet to an iron stake; thence South 84 degrees 33 minutes 00 seconds East 167.63 feet to an iron stake; thence North 86 degrees 49 minutes 30 seconds East 12.15 feet to an iron stake, a corner with Kenneth P. Smith; thence as the Smith line South 41 degrees 12 minutes 30 seconds East 637.84 feet to the point and place of beginning.

Containing 27.81 acres +/- and being all of tract 8 of the Henry McClammy Estate Division as shown on a map duly recorded in Map Book 19, Page 78 of the Pender County Registry.

Together with the following access easement described on Exhibit "B" attached hereto and incorporated herein by reference.

BK3014PG231   BK2988PG284

### EXHIBIT "B"

**Tract #3**

A 30 foot wide access easement extending from Watts Landing Road (NCSR 1560) to the Northeast corner of the Parmalee McClammy Tract (Tract #7 of the McClammy Estate Division, Map Book 19, Page 78) more particularly described as follows:

Beginning at a point in the centerline of Watts Landing Road (NCSR 1560), said beginning point being located South 47 degrees 10 minutes 30 seconds East 223.58 feet, South 48 degrees 37 minutes 00 seconds East 100.00 feet; South 54 degrees 12 minutes 00 seconds East 100.00 feet and South 56 degrees 27 minutes 00 seconds East 30.00 feet from a point in the centerline of NC Highway 210 set in the center of the culvert thru which flows the run of Poley Branch;

Thence from the above described beginning point, along the eastern right of way of McClammy Road and the western line of the Edgar L. Walker tract (Deed Book 1138, Page 126) South 33 degrees 33 minutes 00 seconds West 231.82 feet to a stake in the northern right of way line of McClammy Road; thence as the northern right of way line of McClammy Road South 55 degrees 20 minutes 45 seconds East 805.73 feet and South 34 degrees 32 minutes 15 seconds East 656.45 feet to an iron stake in the Ann J. King line (Deed Book 1548, Page 39); thence as the eastern right of way line of McClammy Road and the King line South 39 degrees 20 minutes 30 seconds West 1919.40 feet, South 52 degrees 34 minutes 30 seconds West 520.00 feet, South 52 degrees 34 minutes 30 seconds West 480.40 feet and South 52 degrees 34 minutes 30 seconds West 640.60 feet to the northeast corner of the Parmalee McClammy line North 38 degrees 54 minutes 00 seconds West 30.00 feet to an iron stake; thence in a northerly direction along the centerline of McClammy Road North 52 degrees 34 minutes 30 seconds East 642.09 feet to a point; thence North 52 degrees 34 minutes 30 seconds East 479.68 feet to a point; thence North 52 degrees 34 minutes 30 seconds East 516.52 feet to a point; thence North 39 degrees 20 minutes 30 seconds East 1893.36 feet; thence North 34 degrees 32 minutes 15 seconds West 628.38 feet; thence North 55 degrees 20 minutes 45 seconds West 829.65 feet; thence North 33 degrees 33 minutes 00 seconds East 260.95 feet to a point in Watts Landing Road; thence South 57 degrees 02 minutes 09 seconds East 29.99 feet to the point and place of beginning.

Being a 30 foot roadway easement as shown on a map of the Henry McClammy Estate Division, duly recorded in Map Book 19, Page 78 of the Pender County Registry.

Mason v. Crescent          Exhibit D
                          Page 13 of 16

**ACKNOWLEDGMENT:**

(Individual)

STATE OF_____ , COUNTY OF _____ } ss.
I _____ , do hereby certify that _____
_____ ,
who is/are known to me or proved to me on the basis of satisfactory evidence to be the
person(s) described, personally appeared before me this day and acknowledged the due
and voluntary execution of the foregoing instrument for the purpose stated therein.
Witness my hand and official seal, this the_____ day of_____ .
My commission expires:

_____
(Notary Public)

(Business
or Entity
Acknow-
ledgment)

STATE OF _NORTH CAROLINA_ , COUNTY OF _Pender_____ } ss.
I _MAURA JOHNSON_____ , certify that _DONALD EARL Millard_
_(PRESIDENT) AND LINWOOD JACKSON JONES (Secretary)_____ ,
who is/are known to me or proved to me on the basis of satisfactory evidence to be the
person(s) described, personally came before me this day and acknowledged that he/she is
_PRESIDENT (Mr. Millard) and Secretary (Mr. Jones)_____
of _Deuce Investments, Inc._____ (Name of Business or Entity),
a _NORTH CAROLINA CORPORATION_____
and that he/she, as _PRESIDENT AND Secretary_____ , being authorized to do
so, voluntarily executed the foregoing instrument for the purpose stated therein on behalf
of the corporation.
WITNESS my hand and official seal, this the _242nd_ day of _June_____ .

My commission expires:
Aug. 29, 2009

_____
(Notary Public)

The Foregoing Certificate(s) of _____

is/are certified to be correct. This instrument and this certificate are duly registered at the
date and time in the Book and Page shown on the first page hereof.
REGISTER OF DEEDS FOR _____ COUNTY
By _____ Deputy/Assistant-Register of Deeds

*(page 11 of 11)*

Experts® © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/7/2005

Mason v. Crescent          Exhibit D
                          Page 14 of 16

EXPLANATION STATEMENT TO CORRECT OBVIOUS MINOR ERROR(S)
MADE IN AN INSTRUMENT AS ORIGINALLY RECORDED

RE:  BOOK  _2985_

PAGE  _177_

RECORDED IN THE  _Pender_  COUNTY REGISTRY

NAMES OF ALL PARTIES TO THE ORIGINAL INSTRUMENT:  Deed of TRUST

GRANTORS:  _Decree INVestments, INC._

GRANTEES:  _Port City CAPITAL BANK_

STATE OF NORTH CAROLINA
COUNTY OF  _Pender_

I/WE, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOLLOWING
CORRECTIONS ARE MADE IN THE ABOVE NAMED RECORDED INSTRUMENT IN ACCORDANCE
WITH THE PROVISIONS OF G.S. 47-36.1 RATIFIED JUNE 30, 1986 AND AMENDED
BY HOUSE BILL 969, 1987 SESSION.

DESCRIPTION OF CORRECTION(S):  _ADD EXHIBITS A (tRACT #1,_
_tRACT #2) AND B (tRACT #3)_
_LegAl DESCRIPTIONS_
_____
_____
_____
_____
_____.

THE SIGNING PARTY(IES) IS(ARE):

◯ THE PARTIES WHO SIGNED THE ORIGINAL INSTRUMENT.

◯ THE ATTORNEY WHO DRAFTED THE ORIGINAL INSTRUMENT.

THIS, THE  _27 th_  DAY OF  _June, 2006,_  _____,  _____.

_Maura Johnson_

THIS EXPLANATION STATEMENT TOGETHER WITH THE ATTACHED INSTRUMENT DULY
RERECORDED AT _____ O'CLOCK ____.M. THIS THE _____ DAY OF _____
_____, _____ IN THE BOOK AND PAGE SHOWN ON THE FIRST
PAGE HEREOF.

_____          BY: _____
REGISTER OF DEEDS                      ASSISTANT-DEPUTY REGISTER OF DEEDS

Mason v. Crescent          Exhibit D
                           Page 15 of 16

EXPLANATION STATEMENT TO CORRECT OBVIOUS MINOR ERROR(S)
MADE IN AN INSTRUMENT AS ORIGINALLY RECORDED

RE:  BOOK _2985 rerecorded in 2988_

PAGE _177 rerecorded 271_

RECORDED IN THE ___Pender___ COUNTY REGISTRY

NAMES OF ALL PARTIES TO THE ORIGINAL INSTRUMENT:
Deed of Trust
GRANTORS: _Deuce Investments, Inc._

GRANTEES: _Port City Capital Bank_

STATE OF NORTH CAROLINA
COUNTY OF _Pender_

   I/WE, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOLLOWING
CORRECTIONS ARE MADE IN THE ABOVE NAMED RECORDED INSTRUMENT IN ACCORDANCE
WITH THE PROVISIONS OF G.S. 47-36.1 RATIFIED JUNE 30, 1986 AND AMENDED
BY HOUSE BILL 969, 1987 SESSION.

DESCRIPTION OF CORRECTION(S): _delete "21st day of June" to read_
_"2nd day of June" in notary clause._

_____

_____

_____

_____

_____.

THE SIGNING PARTY(IES) IS(ARE):

◯ THE PARTIES WHO SIGNED THE ORIGINAL INSTRUMENT.

☒ THE ATTORNEY WHO DRAFTED THE ORIFINAL INSTRUMENT.

THIS, THE _28th_ DAY OF _July_, _2006_.

_Maura Johnson_

_____

THIS EXPLANATION STATEMENT TOGETHER WITH THE ATTACHED INSTRUMENT DULY
RERECORDED AT_____ O'CLOCK____.M. THIS THE_____ DAY OF
_____,_____ IN THE BOOK AND PAGE SHOWN ON THE FIRST
PAGE HEREOF.

BY:_____
REGISTER OF DEEDS                          ASSISTANT-DEPUTY REGISTER OF DEEDS

Mason v. Crescent          Exhibit D
Page 16 of 16

NORTH CAROLINA

DURHAM COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
09 CVS 3929

**DURHAM COUNTY**
**FILED**
SEP 14 2009
AT 10:53 O'CLOCK A M
BY ____
CLERK OF SUPERIOR COURT

DONALD R. MASON,

Plaintiff,

v.

DEUCE INVESTMENTS, INC.,

Defendant.

)
)
)
)
)
)
)
)
)

**SUMMARY JUDGMENT**

This matter came on to be heard before the undersigned Judge Presiding at the September 14, 2009, civil term of the Superior Court of Durham County on the Motion by Plaintiff, Donald R. Mason, for Summary Judgment, pursuant to Rule 56 of the North Carolina Rules of Civil Procedure.

After having reviewed the pleadings, Mr. Mason's affidavit and other matters of record, the Court finds that there is no genuine issue of material fact that the Defendant, Deuce Investments, Inc., has failed to timely repay Mr. Mason for loans made to Deuce Investments, Inc.  Mr. Mason is owed the principal amount of $801,918.02 and pre-judgment interest in the amount of $72,548.06.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that a judgment is hereby entered against Deuce Investments, Inc., in favor of Donald R. Mason for the following amounts:

**Principal:**    **$801,918.02**
**Interest:**     **$72,548.06**

The costs of this action are also awarded to Mr. Mason.  Post-judgment interest to accrue on the principal at the legal rate until paid.

This the 14th day of September, 2009.

_____
Howard Manning Jr.
Superior Court Judge Presiding

H:\WP\Mason\Deuce\Pleadings\Drafts\Summary Judgment.doc

# THE NORTH CAROLINA COURT SYSTEM

## Judgment Payoff Calculation

**Your calculated payoff amount is:  $927,033.41.**

Remaining Principal:        **$801,918.02**
Remaining Court Costs: **$190.00**
Daily Interest:               **$175.7629**
Remaining Interest:        **$124,925.39**

### Calculation Summary

| | | | | | |
|---|---|---|---|---|---|
| **Principal:** | $801,918.02 | **Court Costs to Date:** | $190.00 | **Interest From Date:** | 09/14/2009 |
| **Pre-Judgment Interest Amount:** | $72,548.06 | **Per Annum Interest Rate:** | 8.0000% | **Payoff Date:** | 07/09/2010 |

### Payments

No payments were entered.

[ Print Report ]    [ Back to Calculator ]

*DISCLAIMER*

The judgment calculator is provided as a convenience to allow you to estimate the payoff amount of a judgment. Any payoff amount obtained by using this calculator is NOT BINDING ON THE JUDGMENT CREDITOR. If this amount is paid into the office of the Clerk, the Clerk will forward notice of the payment to the judgment creditor. Only if the creditor does not object within the time permitted by law, will the judgment be satisfied for this amount.

Mason v. Crescent

Exhibit F
Page 1 of 1